[No. 5456.   Decided April 14, 1905.]

F. G. KELLOGG *et al., Appellants,* v. S. J. LOWE, *Respondent.*[1]

LANDLORD AND TENANT—CONSTRUCTIVE EVICTION—LEASE FOR SALOON PURPOSES—PROTEST AGAINST RENEWAL OF LICENSE—GROUNDS FOR REFUSAL OF LICENSE. Where premises were leased for saloon purposes, and the city council refuses to renew a liquor license to the tenants, solely on the ground that more than a majority of the lot owners in the block protested against the same, the tenants cannot claim a constructive eviction by reason of the fact that the landlord, as owner of the lot, did not consent to the issuance of the license, the protesting owners being in the majority irrespective of such lot.

SAME—LANDLORD'S PROTEST AS OWNER OF OTHER LOTS. The fact that the owner of premises leased the same for saloon purposes does not prevent him, as owner of other lots in the same block, from protesting to the city council against the renewal of the tenants' liquor license, and the fact that such protest, together with others, made a majority of the lot owners and prevented the

[1]Reported in 80 Pac. 458.

city council from renewing the license, does not amount to a constructive eviction on the part of the landlord, or entitle the tenants to damages.

Appeal from a judgment of the superior court for Yakima county, Rudkin, J., entered March 4, 1904, in favor of the defendant, upon withdrawing the case from the jury at the close of plaintiffs' evidence, in an action for damages for a constructive eviction. Affirmed.

*C. O. Bates* and *Graves & Englehart,* for appellants.

*H. J. Snively,* for respondent.

CROW, J.—At all of the times herein mentioned respondent, S. J. Lowe, was the owner of lots 9, 10, 11, and 12, of block 10, in the city of North Yakima. On the 6th day of February, 1901, he leased a certain room on said lot 9, to appellants Kellogg & Ford, for a term commencing February 10th, 1901, and ending August 25th, 1903. By said lease, appellants were given an option of renewing the same for one additional year. Said lease also provided that said room was to be used by appellants for general saloon purposes, and that if, at any time during its existence, the city council of North Yakima should refuse them a saloon license, or should revoke their license, then said lease should terminate. Appellants entered into possession of said room, conducted a general saloon business until the 25th day of August, 1902, when a renewal of their license was refused in the manner hereinafter stated.

An ordinance of the city of North Yakima relative to the granting of saloon licenses contains the following provisions:

"Any person desiring to obtain a license for the sale and disposal of spirituous, fermented, malt and other intoxicating liquors within the city of North Yakima, shall make application therefor in writing to the city council,

which application shall particularly describe the lot and block where such business is to be carried on during the continuance of such license, together with the name of the owner of such premises, and if such applicant is not the owner, such application must be accompanied by the consent of the owner consenting to the use of said premises for such purpose. Provided that in case such premises abut on Yakima avenue or First street, or on any street in said city east of said First street, said applicant shall serve notice personally, or by registered mail properly directed, on the owners of all lots abutting on such street in the block in which said premises are located and the block opposite thereto, at least 15 days prior to the date of granting any license, and if the owners of one-half of the front feet of such lots shall protest against the granting of such license, then no license shall be granted, and said applicant shall file with such application the postoffice receipts for such letters and the affidavits showing the time and manner of serving such notices, together with a copy of said notices; provided further that said notice shall contain a statement of the right of such owner to protest and the effect thereof."

As above stated the saloon conducted by appellants was located on lot 9, in said block 10. Block 10 contained twelve lots, each having a frontage of twenty-five feet abutting on the east side of Yakima avenue. On the west side, was block 11, which also contained twelve lots, each having a frontage of twenty-five feet abutting on said avenue. Early in August, 1902, appellants filed with the city council their written application for a renewal of their saloon license, for a continuance of their business on said lot 9. They claim to have complied with all the provisions of said ordinance, and allege that by virtue of the requirements of said ordinance it was necessary for respondent, as owner of the building in which their saloon was situated, to give his written consent to their continuance of the saloon business therein, for the succeeding year; and that, to prevent

appellants from obtaining said license, it was necessary
for the owners of one-half of the frontage of lots in said
blocks 10 and 11, abutting on said avenue, to protest
against the granting of said license; that, when said ap-
plication for license was made, respondent refused to give
his written consent for said appellants to carry on a sa-
loon business in said building, and that he, as owner of lots
10, 11, and 12, filed a written protest with the city council,
signed by himself, whereby he did protest against the issu-
ance of a license to appellants on the premises described
as lot 9 in block 10. Under said ordinance, if the owners
of twelve lots protested, said license would be refused.
Without respondent, the owners of only ten lots made such
protest. With respondent the number was increased to
thirteen.

The city council of North Yakima refused to grant a
renewal of appellants' license, the record showing that such
refusal was made by reason of the fact that a remonstrance,
by the owners of more than one-half of all lots in said
blocks fronting on Yakima avenue, had been presented
and read. The refusal of said license compelled appel-
lants to close their saloon business. They now claim they
were deprived of their unexpired lease, and of their busi-
ness by reason of the acts of respondent, in refusing to
consent to the granting of said license as the owner of lot
9, and in filing a protest against the granting of said li-
cense as owner of lots 10, 11, and 12; that the conduct of
respondent was in effect a constructive eviction of appel-
lants, and that they have suffered heavy damages in the
loss of their lease and the destruction of their business, for
which damages they asked judgment.

Upon the trial, after the above facts had been shown,
and appellants' attorneys had stated they had no further
evidence to offer, except as to the amount of damages suf-

fered, the trial court withdrew the case from the jury, and directed judgment in favor of respondent. From said judgment, this appeal has been taken.

In substance, appellants make two contentions: (1) That, by reason of the action of respondent in refusing to give his written consent as owner of lot 9, to a renewal of appellants' license, he thereby was guilty of a constructive eviction, and became responsible to appellants in damages; (2) that, by reason of the action of respondent in making said written protest as owner of lots 10, 11, and 12, he was likewise guilty of a constructive eviction, and became liable to appellants in damages.

As to the first proposition, we do not think the record clearly shows respondent to have failed to consent to a renewal of the license as owner of lot nine. By the terms of his lease, he had made a formal written consent as to lot 9, for the full period of the tenancy, but even if the lease was not such written consent, the record fails to show that the city council refused to grant the license by reason of the want of such written consent of respondent as the owner of lot 9. They based their refusal solely upon the written protest of the owners of a majority of the lots in said blocks 10 and 11, fronting on said avenue. Said majority having filed such protest, a license could not have been issued under the terms of said ordinance, even though respondent, as the owner of lot 9, had formerly consented to the same in writing. We fail to find that, as owner of lot 9, he did any act which amounted to a constructive eviction, or made him liable to appellants for damages. The refusal of the license was not the direct result of any act of his as owner of lot 9.

Did the act of respondent, in signing said written protest as owner of lots 10, 11, and 12, violate any of his contractual obligations to appellants, or amount to a constructive

eviction? As above suggested the license was refused solely for the reason that, including respondent, the owners of a majority of lots abutting on said avenue in blocks 10 and 11 had protested in writing against the granting of the same. Such protest, without respondent, would not have been sufficient as to the number of lots represented. Appellants have cited two cases upon which they seem to place special reliance. *Brown v. Holyoke Water Power Co.*, 152 Mass. 463, 25 N. E. 966, 23 Am. St. 844, and *Grabenhorst v. Nicodemus*, 42 Md. 236.

We do not see that the case of *Brown v. Holyoke Water Power Co.* is in point. There the landlord not only leased a building, including certain machinery, but also agreed to provide power for the running of said machinery, said power to be transmitted by belting from an adjoining property not included in the lease. The landlord shut off the power, thus rendering worthless to the lessee the leased building and machinery. The landlord was held to have been guilty of an eviction and liable for damages. Here appellants acquired no rights whatever over lots 10, 11, and 12, which were in no way the subject-matter of the lease, nor mentioned therein. Appellants had no control over them, nor had they any right, interest, lien, or claim in or to them.

In *Grabenhorst v. Nicodemus, supra,* the facts show that the landlord leased a certain building to be used as a distillery. Before the tenant could make use of such building, or legally carry on the business of a distiller, it was a condition precedent that he should file with the United States collector the written consent of the lessor as owner permitting such use. That written consent was refused by the lessor, and it was held his action amounted to a constructive eviction, which discharged the lessee from any obligation to pay rent. It is quite possible that, if the city council had failed to construe the lease executed by re-

spondent as his written consent to the issuance and re-
newal of licenses during its full term, and respondent had
refused to otherwise give such written consent, and the
council had refused to grant the license, for that reason only,
and a majority of the lot owners had not filed written pro-
tests, then respondent might be held to have been guilty of
a constructive eviction. But such were not the facts. The
issuance of the license was refused because of the protest
only, and for no other reason. To hold that respondent, as
the owner of lots 10, 11, and 12, could not protest, would
be to hold that appellants had some claim or interest in or
to said lots, under and by virtue of a lease for lot 9
only. It could not be seriously contended that, if respond-
ent had sold lots 10, 11, and 12 during the life of the
lease, his vendee could not have filed a written protest
against the issuance of said license; but if the respondent,
as the owner of lots not included in the lease, could not
protest, the result would be that his vendee could not.
We are not discussing the question as to whether respond-
ent acted with perfect good faith towards appellants; but
are passing upon his rights as owner of lots 10, 11, and
12, and we think he had a clear legal right, as the owner of
such lots not included in the lease, to make written protest
against the issuance of said license.

The judgment of the superior court is affirmed.

MOUNT, C. J., and DUNBAR, J., concur.

ROOT, J.—I concur upon the grounds stated, and for the
further reason that respondent's action in granting per-
mission or interposing protest involved the exercise of a
political privilege, function, and duty, which could not be
the subject-matter of a contract, or restricted thereby.

HADLEY, FULLERTON, and RUDKIN, JJ., took no part.