### KAHN *v.* WILHELM.

Opinion delivered April 26, 1915.

1. WORDS AND PHRASES—"SALOON" DEFINED—LEASE.—In a lease which provided that the lessee "will use said premises as a hotel and saloon, and for no other purpose whatever," the word "saloon" held to mean a place where intoxicating liquors were to be sold.

2. Leases—limitation upon use of premises.—A lease provided that the lessee "will use said premises as a hotel and saloon, and for no other purpose whatever." *Held*, the phrase should be construed as a lease for a single purpose, and that when it became unlawful to operate a saloon for the sale of intoxicating liquors, on the premises, by reason of a city ordinance prohibiting the same, that the entire contract of lease was rendered void, and it is immaterial that the lessor was willing that the premises should be used for other purposes than those mentioned in the written lease.*

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant leased to appellee Wilhelm a building situated in the city of Argenta, for the term of five years, beginning January 1, 1913, at the rate of $165 per month, payable in advance; and appellee Schneider guaranteed the performance of the contract on the part of Wilhelm. For reasons hereinafter stated Wilhelm declined to pay rent, and Schneider was sued in his capacity of guarantor.

The suit was based upon a written lease, which, contained the following provisions:

"And the said party of the second part covenants that he will use said premises as a hotel and saloon, and for no other purpose whatever, and that he specially will not let said premises or permit same to be used for any unlawful business or purpose whatever, * * * under penalty of a forfeiture of all his rights under this lease, at the election of the party of the first part."

The lease further provided: "In the event the lessee shall do anything herein prohibited to be done, justifying the cancellation of this lease by the lessor, he (the lessee) shall be liable for all rents and profits lost or caused to be lost to the lessor by reason of his acts whether the said right of cancellation be exercised or not by the lessor."

"It is further agreed that in the event Pulaski County should vote dry at the election in September, 1916, this lease shall terminate December 31, 1916."

---

*See Section one, Act 418, page 1106, Session Laws 1907.

The City Council of Argenta passed an ordinance December 8, 1913, the validity of which is not questioned, defining the territory in which license for the sale of intoxicating liquors would be granted, and under this ordinance it became unlawful to operate a saloon in the leased premises.

On the 1st of January, 1914, Wilhelm offered to surrender possession of the premises, but the offer was not accepted, and this suit was brought for the rent of January, 1914, upon Wilhelm's refusal to pay the rent for that month.

The cause was heard by the court by consent, sitting as a jury, and this appeal has been duly prosecuted from the finding and judgment of the court below that appellee was not liable for any rent accruing after the 1st of January, 1914.

*Morris M.* and *Louis M. Cohn,* for appellant.

1. The lease was not avoided by the Argenta ordinance, nor by the "Going Act." There is only one provision for the termination of the lease, *i. e.,* that Pulaski County should vote dry, etc. The doctrine of *"expressio unius est exclusio alterius"* clearly applies. 2 Wharton on Cont., § 674; 2 Parsons on Cont., p. 515. An express provision for forfeiture precludes all other causes. 196 U. S. 1; 48 S. W. 1043; 33 N. Y. Supp. 19; 102 Ark. 1, 8; 88 *Id.* 561; 99 *Id.* 291; 93 *Id.* 519; 91 *Id.* 92; 80 *Id.* 374; 79 *Id.* 235; 62 *Id.* 597, and many others.

2. A lease of premises for saloon purposes is not avoided by a subsequent failure to obtain license, or where the sale of liquor subsequently becomes unlawful. 99 Tex. 79; 88 S. W. 197; 113 Pac. 788; 133 Ga. 776; 26 L. R. A. (N. S.) 498; 66 S. E. 1081; 131 Ga. 840; 63 S. E. 631; 1 A. & E. Ann. Cases, 1397; 74 S. E. 279; 161 Ala. 620; 23 L. R. A. (N. S.) 496; 50 So. 83.

The lessor alone can avail himself of such a covenant. 52 L. R. A. (N. S.) 718, and note; 16 Tex. 1; 55 N. Y. 511; etc.

3. A saloon does not always mean a place where intoxicating liquor is sold. It is only where the lessee is

deprived without his fault of the use of the premises for *any purpose* that rent ceases.

It is the duty of the lessee to provide for the contingency of a license being refused. 10 Misc. 718; 31 N. Y. Supp. 818; 132 Pa. 56; 18 Atl. 1069; 41 La. Ann. 281; 6 So. 529; 18 R. I. 770; 30 Atl. 966; 208 Mass. 265; 94 N. E. 307; 131 Pac. 83; 74 S. E. 279; 161 Ala. 620.

4. There is nothing to show that a hotel can not be operated and a saloon for soft drinks, cigars, etc., kept for sale, or a restaurant run, etc. Cases *supra*. See, also, 23 L. R. A. (N. S.) 496; 50 So. 83; 1 A. & E. Ann. Cases 1397, and many others.

*Carmichael, Brooks, Powers & Rector,* for appellee.

1. The language of the lease itself defines the term 'saloon according to the meaning and intention of the parties. Both contemplated a place where intoxicants were to be sold. A contract is made invalid by the subsequent enactment of police regulations which render its performance illegal. Performance of the contract having become unlawful, it follows the promise is avoided. 123 U. S. 623; 158 Mich. 595; 133 Am. St. 339. Where an act contracted for is rendered unlawful by statute before the expiration of the time for performance, the obligation is thereby discharged. 158 Mich. 595; 123 N. W. 24; 39 Mich. 581; 33 Am. Rep. 430; 1 Phila. 106; 62 Conn. 378; 21 L. R. A. 58; 36 Am. St. 350; 26 Atl. 479; 5 Cow. 538; 85 Ga. 1; 21 Am. St. 135; 11 S. E. 442; 128 Ind. 555; 12 L. R. A. 652; 28 N. E. 76; 4 N. Y. 411; 98 N. W. 666; 43 Am. Dec. 499; 13 La. Ann. 599; 1 Salk. 198; 3 Wash. C. C. 276; 19 L. R. A. (N. S.) 964; 60 So. 876.

2. If the landlord is an affirmative party to some unlawful act he can not enforce the contract. 103 Ark. 114; 85 *Id.* 111.

3. But we do not rely upon the acts of individuals, we rely upon the law. 60 So. 876. This is the latest case we have found. The Argenta ordinance was not in existence when the lease was made. For full discussion of all the authorities see, 60 So. 876.

SMITH, J., (after stating the facts).  The controlling question in the case is whether or not the ordinance of the City of Argenta, making it unlawful to sell intoxicating liquors in the leased premises, operated to cancel the lease.  It will be observed that the language of the lease is that Wilhelm covenants that he will use said premises as a hotel and saloon, and for no other purpose whatever, and that he specially will not let said premises, or permit same to be used for any unlawful business or purpose whatever.

(1)  It is first argued that the word "saloon" does not necessarily mean a place where intoxicating liquors are sold, and that the city ordinance prevents the operation only of a saloon for the sale of intoxicating liquors.  It is true that the word "saloon" does not always mean a place where intoxicating liquors are sold, but there can be no doubt that such was the meaning contemplated by the parties to this contract.  This is shown by the provision of the lease cancelling it in the event Pulaski County should vote dry at the election in 1916.  This election, of course, refers only to saloons in which intoxicating liquors are sold, as no other kind of saloons could be affected by that election.

But it is insisted that, even though it be conceded that the word "saloon," as here used, means a place where intoxicating liquors are sold, this would not avoid the lease, because the keeping of a saloon was not the only business authorized by the contract; and for the further reason that the parties expressly named a condition upon which the lease should be terminated, towit:  That Pulaski County should vote dry at the general election in 1916, and that having named one condition which should operate to cancel the lease, the parties thereby agreed that the lease should not otherwise be cancelled.  This last contention was based upon the doctrine of *expressio unius est exclusio alterius*.

(2)  We think the important question in the case is whether or not the building was leased for a single purpose, that purpose being the operation of a hotel and saloon; and we think the lease should be so construed.  The

lease does not provide for keeping a hotel *or* saloon, but for a "hotel *and* saloon."

It is not necessary that a lease specify the use to be made of the property let. In 24 Cyc. 1061, under the title of "Landlord and Tenant," it is said: "Where the contract of lease is silent on the subject, the lessees have by implication the right to put the premises to such use and employment as they please, not materially different from that in which they are usually employed, to which they are adapted, and for which they were constructed. The law, however, implies an obligation on the part of the lessee to use the property in a proper and tenant-like manner, without exposing the buildings to ruin or waste by acts of omission or commission, and not to put them to a use or employment materially different from that in which they are usually employed, or apparently violative of the spirit and purpose of the lease as such spirit and purpose is evidenced by the recitals therein."

Discussing restrictions in leases as to mode of use, the same authority, page 1062, says: "Express condition or covenants are frequently embodied in leases to the effect that the premises shall only be used for purposes specified therein, and such covenants run with the land. A recital in a lease of the purposes for which the demised premises are let is often held to constitute an express covenant on the part of the tenant to use them for no other purpose. Where, however, such restrictive conditions or covenants are incorporated into a lease, the general rule of interpretation is that they should be so construed as to carry into effect the intention of the parties, and when considered in connection with other parts of the instrument, will tend to support, rather than defeat it. * * * "

The parties to this lease agreed and covenanted that the property should be used as a hotel and saloon, and for no other purpose whatever, and, in construing the lease, we have no right to strike out one of the terms there employed. It is argued that the building could be used for a hotel, even though no saloon was kept there, and that a temperance saloon could be kept, where cigars and non-

intoxicating drinks could be bought; and further that the property has other usable value. But we think the answer to this contention is that this is not a general lease, but a special one, for the purpose of operating a hotel and saloon. It is alleged, and there was proof to support the allegation, that the landlord does not object to the tenant making other uses of the property. But we can not consider the landlord's present inclination in determining the meaning of his written contract. His permission for a different use is essential and it would be a modification of the contract to read into it the landlord's changed purpose. And in construing this lease, we can not say that the stipulation of the use to be made of the building was solely for the benefit of the landlord.

Through the industry and research of opposing counsel, we have had the benefit of citation to many cases on this subject; but we shall not undertake to review these cases in this opinion. The cases are numerous and are conflicting, and it must be conceded that there are courts of the highest authority which sustain appellant's view of the law. But we think the better rule is announced by those courts which hold such contracts to be void, when their performance becomes unlawful.

In the case of *Hooper* v. *Mueller,* 158 Mich. 595, 123 N. W. 24, a certain building in Alma, Michigan, with the hotel furniture and fixtures, was let for a term of eight years, to be occupied for hotel and saloon purposes. The lease contained the following clause: "The said first parties further agree that in case they are unable to furnish, that is secure, for the said second parties, or the tenant of said parties, two sufficient bondsmen required by law in case of retail dealers in malt and spirituous liquors, at second parties' own proper expense, however, then this lease shall be and become void." Thereafter, under the operation of the local option law, the sale of intoxicating liquors was prohibited, and upon suit for the rent of the building after the prohibitory order became effective, the trial court held that the lease became void and nonenforceable on the date the prohibitory order became effective. It was there contended that the contract did not

provide for its abrogation in the event of the adoption of local option, and, consequently, the law would not operate to avoid it on the happening of that event. But the court there said:

"It is not argued by either party that the contract was not such a one as the parties at the time could not undertake to perform, and which could not be enforced. The local option law which went into effect in that county during the term of this lease, rendered the performance of the contract on the part of plaintiffs impossible. They had agreed that in case of failure to furnish and secure bondsmen for defendants as retail liquor dealers, the lease should be and become void. It may well be said that they contracted with reference to this contingency which has arisen, as well as to any other circumstance which would intervene, either from their own acts or otherwise. This was a part of the consideration which induced defendants to enter into the lease.

"In a recent well-considered case decided by the Supreme Court of Maine, the question involved in the case at bar was before the court. It was held that the enactment of a law after a lawful contract is made which renders its performance unlawful, discharges the contract. *American Mercantile Exchange* v. *Blunt,* 102 Me. 128, 120 Am. St. Rep. 463, 66 Atl. 212, 10 L. R. A. (N. S.) 414, 10 Em. & Eng. Ann. Cas. 1022, notes and cases cited. In the case note, it is said: 'The authorities are almost unanimous in holding that, where the act contracted for is rendered unlawful by the enactment of a statute before the expiration of the time for performance, the obligation is thereby discharged,' citing, among other cases, *Cordes* v. *Miller,* 39 Mich. 581, 33 Am. Rep. 430.''

In the case of *Jamieson* v. *Indiana Natural Gas & Oil Co.,* 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652, a bill of complaint was filed by a stockholder seeking an injunction, in which it was alleged that a contract had been entered into by his corporation with a construction company for building and operating a pipe line for transportation of natural gas, which had become incapable of per-

formance by reason of a statute passed, after part performance, which prohibited the transportation of gas at as high pressure as that provided for in the contract; and the syllabus in that case is as follows:

"A contract is invalidated by the subsequent enactment of police regulations which render its performance illegal as to one of the parties."

An extensive case note reviews a large number of cases.

Another case which discusses the principle which we think should control here is that of *Heart* v. *East Tennessee Brewing Co.,* 19 L. R. A. (N. S.) 964, 113 S. W. 664. In that case a certain house situated in Knoxville, Tenn., had been leased for a term of eight years, to be used as a saloon or place for the sale of intoxicating liquors, and by an act of the General Assembly of that State, it thereafter became unlawful to sell intoxicating liquors in said city. The chancellor sustained a demurrer to a suit for the rent which accrued thereafter, and, in sustaining that action, the Supreme Court of Tennessee, speaking through Shields, J., said:

"There is no error in the action of the chancellor. When the contract was made, the purpose for which the property was leased, the sale of intoxicating liquors in Knoxville—was lawful, and the lease valid and enforceable. Afterward, that purpose was made unlawful by the acts of the General Assembly above referred to, and thus, by operation of law, the lease became and is void and unenforceable at the instance of either party."

Many cases were cited in that opinion, and among other things, it was there said:

"It is a principle of general application that all contracts are void which provide for doing a thing which is contrary to law, morality, and public policy. * * * It has been applied to contracts of this character, and held for that reason, that the rent contracted to be paid could not be collected."

"It is not necessary in this case to determine whether or not the contract contained in the lease restricts the use of the property for the sale of intoxicating liquors.

It was the purpose of both lessor and lessee, as clearly expresesd in the instrument, that it should be used as a saloon, and this being made unlawful by law, the contract is no longer enforceable."

One of the cases strongly relied on by appellant is that of *O'Byrne* v. *Henley,* 23 L. R. A. (N. S.) 496, 50 So. 83. The lease in that case provided for the occupation of the premises as a saloon, and not otherwise. The court there discussed the meaning of the word "saloon," and held that this word will not be understood, as a matter of law, to mean a place where intoxicating liquors only were sold, and not a place for the sale of soda water, etc., and it was there said that there had been only a partial, and not a total, destruction of the business for which the premises were leased after the prohibitory law became effective which prevented the operation of a saloon for the sale of intoxicating liquors. That the lessee could have continued to use the premises as a saloon, though he could not have sold intoxicating drinks or beverages, and after reviewing a number of cases, the court reached the conclusion expressed in the syllabus as follows:

"A lease of property solely for saloon purposes is not terminated by the taking effect during the term of a prohibitory liquor law, where, by construction of the parties, the right was conferred upon the lessee of selling upon the property nonintoxicating beverages and tobacco, so that the right of the lessee was not totally destroyed."

A later case by the same court is that of *Greil Bros.* v. *Mabson,* 60 So. 876, 179 Ala. 444. The lease in that case provided "that the parties of the first part have leased * * * the bar room and fixtures known as the Windsor Hotel Bar, and located in the Windsor Hotel building on Commerce Street, for occupation as a bar, and not otherwise." The complaint in that case set out the facts stated above, and alleged the passage of a prohibitory law, which made the sale of intoxicating liquors unlawful in the State of Alabama. A demurrer was interposed to the complaint, which raised the question of the sufficiency of the allegations of the complaint of incapacity to use the building for other purposes than the sale of intoxicating

liquors, in that it was not shown that the passage of the prohibitory act destroyed or deprived the lessee of the beneficial use of the premises, and that it was not alleged in the complaint that the lessor had declined or refused to permit the lessee to use the premises for other legitimate purposes, or that the lessor had consented to an abandonment of the premises. The opinion in that case called attention to the fact that the lease included the bar room and fixtures inseparably and provided that the room was to be occupied as a bar, and not otherwise, and that the lessor was bound under the contract to have permitted the use of the property as a bar, and the lessee was prohibited from using it for any other purpose. After defining the terms "bar" and "barroom," the court said:

"It is therefore evident that the main, and, indeed, the sole, purpose for which the property was leased was that it should be used as a place for selling intoxicating liquors. Therefore, did the said business become totally prohibited by the subsequently enacted State prohibition law? We think that such was the result, and that the said prohibition law forbade the very business and purpose for which the property was leased. The general rule is that, where the performance of a contract becomes impossible subsequent to the making of same, the promissor is not thereby discharged. 9 Cyc. 627. But this rule has its exceptions, and these exceptions are where the performance becomes impossible by law, either by reason of a change in the law, or by some action or authority of the Government. It is generally held that, where the act or thing contracted to be done is subsequently made unlawful by an act of the Legislature, the promise is avoided. Likewise, where the performance depends upon the continued existence of a thing which is assumed as a basis of the agreement, the destruction of the thing by the enactment of a law terminates the obligation."

Without reviewing in detail the decisions of the various courts upon this subject, it may be said that we have a statute on the subject of leases of buildings for use in connection with the unlawful sale of intoxicating liquors of a kind which we have not found referred to in any of the

opinions which have been called to our attention on this subject. This is Act No. 418 of the Acts of 1907, found on page 1106 of the Acts of the General Assembly for that year.

The purpose of this act was to aid in the suppression of the unlawful sale of intoxicating liquors, and, as a means to that end, it is made unlawful for one to lease a building for that purpose, and under the conditions stated, the landlord is made guilty of a misdemeanor who permits the illegal sale of intoxicating liquors in his building, and the act cancels the lease where the liquor law is violated.

Performance of the contract having, therefore, become unlawful, it must necessarily follow that no action will lie to compel its performance, and the judgment of the court below is therefore affirmed.

McCulloch, C. J., dissenting. I find no fault with the court's statement of the principle, as an abstract proposition of law, that "a contract is invalidated by the subsequent enactment of a police regulation which renders its performance illegal as to one of the parties," but that principle is not, in my judgment, applicable to the contract now under consideration. Such a construction of the contract should be adopted as will obviate a forfeiture or abrogation, if that construction be fairly within the meaning of the language used. The clause concerning the use of the leased premises was intended merely to permit the use for the purposes named and to restrict the use to that extent. It was manifestly not intended as a covenant to use the premises for those purposes—certainly not for both purposes—the operation of a saloon and a hotel. There is nothing in the contract itself nor in the evidence in the case to show that the lessor was interested in that particular use of the premises. Therefore, it would be a very strained construction of the contract to hold that it was a covenant on the part of the lessee to so use the premises. If any doubt is felt on that point, it ought to be dispelled on consideration of the express stipulation of the contract that "in the event Pulaski County should vote

dry in September, 1916, this lease shall terminate December 31, 1916.'' If the parties meant to create an absolute obligation on the part of the lessee to operate a saloon on the premises, and to absolve him from that obligation whenever its performance should become unlawful, they would not have confined themselves to that stipulation on the subject, for they are presumed to have known at the time the contract was entered into that the performance of such an undertaking might be rendered illegal by the failure of the electors to vote for license at the election in September, 1914, or by a majority of the adult inhabitants in that locality petitioning out the sale of liquor at any time under the ''three-mile'' law.

Treating the contract, therefore, as one merely permitting the use of the premises for the operation of a hotel and as a saloon, and restricting the occupancy to those uses, I do not think the principle referred to should be applied. Under that state of the case, it can not be said that the contract has been subsequently invalidated by operation of law. The contract is still valid notwithstanding the subsequent enactment of the regulation restricting the use of the premises so as to prohibit the operation of a saloon at that place. That part of the contract specifying the use to which the premises might be put is separable unless the contract be treated as a covenant on the part of the lessee to use the premises for the purposes named. The contract permits the use of the premises as a hotel and as a saloon, and, of course, extends to either one or both of the specified uses. The use of the premises for either one of the specified purposes would be within the letter of the contract. The test is this: Would the lessee be within his contractual rights in using the premises for the operation of a hotel without also operating a saloon? If so, he is not absolved from the obligation of the contract by reason of the fact that the new regulation enacted by the city council renders it unlawful for him to operate a saloon at that place. In order to hold otherwise, it would be necessary to construe the contract as an affirmative undertaking on the part of the lessee to use the premises as a saloon as well as a hotel, but

I do not understand the court to go that far—at any rate, it is not tenable to assume that position. There is some conflict in the authorities on this subject, but none of them (except the case of *Heart* v. *East Tennessee Brewing Co.,* which is referred to later), go to the extent of holding, as this court does in the present case, that where the contract does not restrict the use of the leased premises to one purpose, is it invalidated by a subsequent enactment prohibiting the use for one of several purposes specified. The great weight of authority is, I think, to the effect that unless there is an affirmative undertaking on the part of the lessee to make a specified use of the premises—that is to say, unless the operation of the specified business is a part of the contract—the subsequent enactment of a police regulation prohibiting the use does not of itself abrogate the contract. The cases are cited on the briefs, and it is only necessary to quote from a few of them to show the state of the law on that subject.

The case of *Houston Ice & Brewing Co.* v. *Keenan,* 99 Tex. 79, 88 S. W. 197, involved a rental contract which provided that the leased premises should be used only for "saloon purposes," and subsequently the sale of intoxicants was, by vote of the people under the local option law, prohibited at that place. The lessee sought to escape the payment of rent, but the court, in holding him liable notwithstanding the fact that it had become unlawful to use the premises for the purposes named in the contract, said: "Appellee had no interest in the business to be conducted in the leased building, and appellant knew that, by a vote of the people under the existing statute referred to, the 'saloon business,' which included the sale of intoxicating liquors, might be prohibited before the beginning of the lease term. This was a probable contingency which an ordinarily prudent man should have foreseen and provided for in his contract, and, having failed to so do, he took the risk upon himself, and must abide the consequences."

In *Goodrum Tobacco Co.* v. *Potts-Thompson Liquor Co.,* 133 Ga. 776, 66 S. E. 1081, 26 L. R. A. (N. S.) 498, there was a lease contract which stated that "the purpose

of this lease is for the operation by second party of a general retail liquor business,'' and the lessee abandoned the premises and refused to pay rent after the sale of liquor was prohibited by statute. The court, in disposing of the controversy, said: ''We do not deem it necessary for the decision of this case to decide whether the clause that 'the purpose of this lease is for the operation by second party of a general retail liquor business,' denotes only permission to conduct that particular business, or restricts the tenants from devoting the premises to other lawful beneficial use. In either event, the tenant would not be relieved from the payment of rent.''

In *Teller* v. *Boyle,* 132 Pa. 56, the facts were that the lease contract contained a covenant that the lessee would not permit the premises to be occupied otherwise than as a saloon and dwelling, and it became impossible to operate a saloon by reason of the fact that the court of quarter sessions refused to relicense the lessee to sell intoxicating liquors. It was held that the lessee was responsible for rent, notwithstanding the facts stated, and the court said: ''If the lessor were insisting that his lessee should sell intoxicating liquors, and claiming the right to forfeit the lease because he refused to comply, it would doubtless be a good defense to say that he was forbidden by law to sell; but that is not this case. The license was a matter with which the lessor had nothing to do. The risk of obtaining it was assumed by the lessee; and that risk, as he must have known, depended on many contingencies, such as public necessity, character and conduct of the applicant.''

In *Gaston* v. *Gordon,* 208 Mass. 265, the facts were quite similar to those in the *Pennsylvania* case, *supra,* and the Massachusetts court reached the same conclusion as to the law. The court, in stating its conclusions, said: ''There is nothing about the lease to raise the inference that the parties intended it to be subject to an implied condition that the defendant should procure a license. On the contrary, there is much to lead to the opposite conclusion. It is elaborate in all its details. * * * The lease seems to be a studied effort to put into written phrase

every consideration which was a part of their agreement. It was apparently an intelligent attempt to express their contract in such a way and with such fullness that nothing could be left uncertain. * * * The lessee has bound himself in unmistakable language to pay the rent without any qualification dependent upon his failure to obtain the necessary authority from public officers. Although this mischance renders it impossible for him to make the valuable use of the property which was contemplated, that was a contingency which ought to have been foreseen, and some anticipatory provision of partial or entire exoneration from liability inserted in the lease if such was the intention of the parties."

The theory upon which the rule rests is that the lessee, who voluntarily takes upon himself an unconditional obligation to pay rent, is not excused from such payment merely because he is prohibited by law, or by any agency other than the lessor himself, from using the premises. The principle was stated by Chancellor Kent as follows: "If a party will voluntarily create a duty or charge upon himself, he ought to abide by it when the other party is not in fault, and when he might have provided, if he had chosen, against his responsibility in case of such accidents." 3 Kent. Comm. 467. That principle finds peculiar force in the present case where the parties themselves have expressly stipulated that the lessee shall be exonerated from liability for rent in one contingency (i. e., that of a majority vote against license in September, 1916), and under the maxim *expressio unius est exclusio alterius,* the presumption arises that they did not intend that the lessee should, under any other circumstances, be excused. *Hope Spoke Co.* v. *Maryland Casualty Co.,* 102 Ark. 1; 2 Wharton on Contracts, section 674.

There are only two cases which seem to support the conclusion reached by the majority, and they are cited in the opinion. *Heart* v. *East Tennessee Brewing Co.,* 121 Tenn. 69, 19 L. R. A. (N. S.) 964; *Greil Brothers* v. *Mabson,* 179 Ala. 444, 60 So. 876. The Alabama case, however, distinguishes a former decision of that court (*O'Byrne* v. *Henley,* 161 Ala. 620) which is directly

against the decision in the present case. Both of those cases cited by the majority are distinguishable from the present one in that a single use of the premises was specified. In the present case, there are two uses specified, and, as it clearly appears to me, the contract does not treat them as inseparable uses. Those cases are also distinguishable from the present one in that the parties to the contracts did not undertake to specify any circumstances under which payment of rent would be excused, and no presumption arose from the expression of one excuse against an intention to exclude others. The maxim *expressio unius est exclusio alterius* did not, in other words, arise. The Tennessee case stands alone, and, in my judgment, is not supported by any other authority.

My conclusion, therefore, is that the court has misinterpreted the law and rendered a decision which is neither sound upon principle nor supported by the weight of authority.