## Christian Moerlein Brewing Company v. Roser.

(Decided March 16, 1916.)

### Appeal from Mason Circuit Court.

1. **Intoxicating Liquors—Limiting the Number of Licenses and Places of Sale—Power of Council.**—The council of a city, where the sale of intoxicating liquors is permitted by law, has a reasonable discretion in determining the places of sale, the number of licenses and the persons to whom such licenses shall be granted; and when this has been done they may properly refuse to issue any additional licenses, even though there be no objection to the applicants or their proposed places of business.

2. **Landlord and Tenant—Lease for Saloon Purposes—Sale of Intoxicating Liquors—Right to Surrender if Sale Prohibited.**—Under a lease giving to the lessee the right to terminate it by giving thirty days' written notice, if the sale of intoxicating liquors upon the premises "is prohibited during the term of the lease, or any renewal or extension thereof, by state, municipal, township or other political subdivision of the state, or any duly constituted authority, or action under or by virtue of existing or future laws, or actions providing and authorizing the same," the action of the council and the license committee of a city, in limiting the number of licenses and designating fourteen places other than the leased premises as the only places of sale, is a prohibition of the sale of intoxicating liquors on the leased premises.

3. **Landlord and Tenant—Lease for Saloon Purposes—Prohibition of Sale of Intoxicants—Right to Terminate Lease—Pleadings.**—Where a lease authorizes the lessee to surrender the premises if the sale of intoxicating liquors on the premises is prohibited, and the council adopts a resolution limiting the number of saloons, and the license committee at the same time designates the place of sale and selects the applicants to whom licenses shall be granted and does not include the leased premises, and the proceedings of the council and license committee do not show that all applicants were notified or given an opportunity to apply and to be heard,

or that any of the applicants were rejected because of their bad moral characters or their previous violations of the law, it is not necessary, in an answer pleading that the sale of intoxicating liquors on the leased premises was prohibited, to allege that the lessee, or some other person for it, applied for licenses prior to the action of the council and were not refused because they were improper persons.

4. Landlord and Tenant—Lease for Saloon Purposes—Prohibition of Sale of Intoxicants.—Where a lessee has the right under a lease to surrender the premises if the sale of intoxicating liquors thereon is prohibited, and the council, before taking action limiting the number of licenses and designating the places of sale at other places than the leased premises, gives to all applicants a reasonable opportunity to apply and to be heard, the lessee cannot avail himself of the provision of the lease and surrender the premises if neither he, nor other persons for him, applied for licenses, or having applied were refused licenses because they were not proper persons.

WORTHINGTON, COCHRAN and BROWNING for appellant.

ALLAN D. COLE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On August 14th, 1912, Sarah Roser, by separate contracts, leased to the Christian Moerlein Brewing Company two three-story brick buildings, designated as numbers 123 and 125 West Market street in the city of Maysville, for the term of three years from January 1st, 1913, For each of these buildings the brewing company agreed to pay an annual rental of $720.00, payable in monthly installments of $60.00 each.  It further agreed to make all necessary repairs to the inside of each building during the continuance of the leases.   Each of the leases contains the following provisions:

"It is further agreed and understood by and between the parties hereto that if the sale of malt, spirituous or vinous liquors upon the premises herein described is prohibited during the term of this lease, or any renewal or extension thereof, by state, municipal, township or other political sub-division of the state, or any duly constituted authority, or action under or by virtue of existing or future laws, or actions providing and authorizing the same, then the lessee may, at its option, terminate this lease, by giving thirty days' written notice to the lessor of its intention so to do."

The brewing company paid Mrs. Roser the rent due on each of the buildings for the first half year of the leases. On May 20th, 1914, she brought this suit to recover the rent for the balance of the year, amounting to $720.00, and $100.00 additional for failure of the brewing company to repair the premises.

Defendant answered in two paragraphs. In paragraph 1 it denied certain material allegations of the petition. In paragraph 2 it pleaded that just prior to the time of occupancy of said buildings under said contracts was to begin, the council of the city of Maysville passed a resolution whereby the number of saloons to be licensed in the city of Maysville during the year 1913 was limited to fourteen, and at the time licenses were issued to fourteen persons conducting saloons in properties other than those rented by defendant under said contracts, and refused to issue licenses to conduct such business to any others than the fourteen referred to; that by said action upon their part the said council of the city of Maysville prohibited and prevented the sale of malt, spirituous and vinous liquors upon the premises rented by defendant of plaintiff under and pursuant to said contracts. The answer further alleges that the defendant, pursuant to the terms of said contract, notified plaintiff thirty days prior thereto that on June 30th, 1913, it would in each instance terminate the lease, and, pursuant to said notice, did terminate said lease in each instance and did vacate the property covered by the lease. The answer makes the proceedings of the council a part thereof, and filed with the answer is the following exhibit:

"Member Keith, Chairman License Committee, offered the following:

## "RESOLUTION.

"To His Hon. the Mayor:—

"We your license committee after mature deliberation, beg leave to recommend as acceptable applicants for the privilege of operating a saloon in the city of Maysville the appended list that we ask council to approve. Realizing that the general public hold the council (the granting power of this privilege) more responsible for the proper conduct of the sale of liquor than the individual keeper of a saloon, we have aimed in these recommendations to get the best possible results. Some

hardships have necessarily been inflicted for which we feel sorry, but our public duty makes our action in this matter imperative to those applicants whose license we grant tonight. We would call their attention to the fact that a strict observation of the city ordinances will be required. That greater care must be taken in the conduct of their business. That the selling to minors or known inebriates, or permitting of games of chance of any character, mechanical or otherwise, selling on Sundays or days prohibited by law, or harboring undesirable characters will be deemed sufficient cause for a revocation of their licenses. That the applicant will be held responsible for the conduct of his business at all times and that the piling of kegs or cases in front of their places longer than is absolutely necessary will not be tolerated. We hope that during the balance of the council official life we will have no cause to revoke the license of any of those granted tonight and that 1914 will find Maysville the best regulated town in the state.

"We further recommend the adoption of the resolution attached hereto.

(Signed) "Thos. A. Keith,
"Chairman License Committee.

". "Whereas, It is the opinion of the Board of Council that the existing number of saloons in the city of Maysville exceeds the needs of the community, and is a disadvantage to all persons engaged in the liquor business, and to the inhabitants in general.

"Therefore, Be it resolved by the Board of Council of the city of Maysville, that the bar-room license granted for the year 1913, shall not exceed fourteen (14) in number.

"(Moved by Arn, seconded by Clooney, that said resolution be adopted on call of the aye and nay. Aye: Arn, Clooney, Everett, Harover, Greenlee, Keith, McCarthy. Nay: Boyce, Gentley, Fleming, Hendrickson, Snapp. Resolution adopted.)

"The License Committee recommend the following applications for bar-room licenses be allowed:

"Frank Miller, Central Hotel Co., Terry Mackey, M. J. Donovan, E. H. Whittington, Chas. H. Bland, Dan Miller, Frank Eitel, Jas. Dunn, W. H. Farwick, John Burk, Breeze Bros., Geo. M. Diener, O. Greenlee."

To paragraph 2 a demurrer was sustained. Thereupon defendant filed an amendment to paragraph 2 and

pleaded in substance that each of the buildings was rented for saloon purposes; that on December 30th, 1912, the council of the city of Maysville issued licenses for the year beginning January 1st, 1913, and ending December 31st, 1913, fourteen in number, to persons to conduct saloons, and same were conducted during said period in premises as follows: (Here follows a list of the names of the persons to whom licenses were granted and a description of the premises occupied by them. This list shows that no licenses were granted for the premises covered by the leases in question.) The amended answer alleges that the resolution of the council, which was made a part thereof, continued in full force and effect during the entire year of 1913. A demurrer to paragraph 2 of the answer as amended was sustained, and defendant, having declined to plead further, judgment was rendered in favor of plaintiff. Defendant appeals.

It is doubtful if broader or more comprehensive language could have been employed than that conferring on the lessee the right to terminate the leases in question. Territorial prohibition is not a prerequisite to the right of termination. Prohibition with respect to the leased premises is all that is required. It is immaterial how the prohibition is effected. It is sufficient if it be brought about by law enacted by any duly constituted authority, "or action under or by virtue of existing or future laws, or actions providing and authorizing the same." It is well settled in this jurisdiction that the trustees or councils of municipalities, where the sale of intoxicating liquors is permitted by law, have a reasonable discretion in determining the places of sale, the number of licenses and the persons to whom such licenses shall be granted, and when this has been done they may properly refuse to issue any additional licenses, even though there be no objection to the applicants or their proposed places of business. Schwierman v. Town of Highland Park, 130 Ky., 537. And we see no good reason why such discretion may not be authorized by and exercised under a resolution as well as an ordinance. It follows that the action of the council and license committee, in locating the number and places of the saloons and in designating the persons to whom licenses should be granted, was valid. Inasmuch as the council designated fourteen places of sale and no others,

and refused to grant licenses for any other places, the sale of intoxicating liquors on the premises covered by the two leases was necessarily prohibited by "action under or by virtue of existing or future laws, or actions providing and authorizing the same."

But it is suggested that the answer is fatally defective because it does not allege that the defendant or any person ever applied for a license to sell liquors on the premises in question, or was ever refused such a license. The answer is also assailed on the ground that it fails to allege that the persons so applying were not unobjectionable because of their immoral characters or their previous violations of the law. Had it appeared from the proceedings of the council and license committee that all applicants were notified or given an opportunity to apply, and that some of the applications were rejected because the applicants were improper persons, there might be some reason for holding that defendant should have alleged that, prior to the action of the council and license committee, it, or some proposed tenants, had applied for licenses and that they were not refused because they were improper persons. As a matter of fact, however, the proceedings of the council and license committee fail to show that all applicants for licenses were notified or given an opportunity to apply and to be heard before action was taken. Furthermore, the proceedings do not show that any applicants were refused licenses because they were improper persons. On the contrary, the report of the license committee shows that some hardships were inflicted, for which the committee were sorry. What is said in the report with respect to the applicants obeying the law refers only to those applicants to whom licenses were granted. It has no reference to applicants to whom licenses were refused. In view of these facts, we conclude that it was not necessary for defendant to allege that it, or its proposed tenants, applied for licenses before action was taken, and that they were not refused because of their bad moral characters or their previous violations of the law. Nor do we think it was necessary for defendant to allege that such applications were made after action by the council and that the applicants were not then refused because they were improper persons. At that time the council had acted. It had designated the places of sale and the persons to whom licenses should be granted. Having done this, it

is clear that no person, good or bad, could have obtained a license, and the law does not require the doing of a vain thing. As before stated, the foregoing conclusion is based entirely on the proceedings of the council. We do not mean to hold that if, as a matter of fact, the license committee or the council gave to the applicants a reasonable opportunity to apply and to be heard before action was taken, defendant could have failed to apply and then have availed itself of the provisions of the leases. On the contrary, we conclude that if it, or persons for it, failed to apply, or after applying were refused the necessary licenses because the applicants were not proper persons, it cannot take advantage of its own negligence or misconduct and thereby avoid the leases. We are of the opinion, however, that, under the facts of this case, the burden of alleging and establishing one or both of these propositions is upon plaintiff. It follows that the trial court erred in sustaining the demurrer to the answer as amended.

Judgment reversed and cause remanded for proceedings consistent with this opinion.