[No. 13606. Department One. December 29, 1916.]

THE STRATFORD, INCORPORATED, *Respondent*, v. SEATTLE BREWING & MALTING COMPANY *et al., Appellants.*[1]

LANDLORD AND TENANT—LEASE—MODIFICATION. Where a lease stipulated that the premises were not to be used for any other purposes than that of a saloon, a subsequent modification permitting a sublease of a portion of the premises for a restaurant, cigar, and bootblack business, does not change the principal purpose of the lease.

SAME—LEASE—"SALOON." A lease of premises for a "saloon business" necessarily contemplates the business of selling intoxicating liquors.

SAME—LEASE—TERMINATION—EFFECT OF PROHIBITION LAW ON "SALOON" LEASE. The prohibition law, Rem. Code, § 6262-5, making it illegal after January 1, 1916, to lease or permit the use of premises for the purpose of selling intoxicating liquors, annuls the unexpired term of a lease of premises for a saloon.

SAME. It is immaterial that permission had been granted to use portions of the premises for other purposes, where the lessee had agreed to rent the premises and use them for a saloon.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 19, 1916, upon findings in favor of the plaintiff, in an action by a lessee to recover a deposit paid the lessor to be applied as rent upon premises leased for saloon purposes, tried to the court. Affirmed.

*Kerr & McCord*, for appellants.

*William Wray*, for respondent.

[1]Reported in 162 Pac. 31.

HOLCOMB, J.—The one question for consideration on this appeal is whether the enactment by the people at the general election in 1914 of Initiative Measure No. 3, taking effect January 1, 1916 (Laws 1915, p. 2, § 1 *et seq.*; Rem. Code, § 6262-1 *et seq.*), rendered a certain lease for saloon purposes void. The lower court held it did.

The lease in question was originally executed on July 1, 1912, by appellant Sweeney to the firm of Deatkin & Goldie, for the premises at 910 Second avenue, in Seattle, for a term of four years, seven months and twenty-six days, with certain stipulated rentals and a provision that a deposit of $2,500 should be made, and which was made, to be held and applied to the last three months of the rental for the leased term. There was a condition in the lease that "said lessees should not use said premises for any other purpose than that of a saloon." On July 9, eight days after the execution of the lease, the lessees applied to lessor for permission to use the leased premises for a bootblack and cigar stand and for restaurant purposes in addition to the saloon, which permission was granted, and the lease was so modified. Thereafter the premises were used for such several purposes. The lessees with their wives incorporated their business under the name of The Stratford, Incorporated, and own all its stock. After it was modified as above stated, the lease was assigned by Deatkin & Goldie to the appellant brewing company, which company thereafter let the demised premises to the respondent upon the same terms, with one additional condition, viz., that respondent should "purchase all its beer from appellant brewing company during the term of the lease." To sustain their contention that a lease is not avoided by the subsequent intervention of laws prohibiting saloons or the sale of intoxicating liquors in the *locus in quo*, appellants advance the following propositions and cite cases in support thereof:

A lease of property solely for saloon purposes is not terminated by the taking effect, during the term, of a prohibitory liquor law, where, by the construction of the parties, the right

was conferred on the lessee of selling upon the property non-intoxicating beverages and tobacco, so that the right of the lessee was not totally destroyed. *O'Byrne v. Henley,* 161 Ala. 620, 50 South. 83, 23 L. R. A. (N. S.) 496; *Lawrence v. White,* 131 Ga. 840, 63 S. E. 631, 19 L. R. A. (N. S.) 966; *Houston Ice & Brewing Co. v. Keenan,* 99 Tex. 79, 88 S. W. 197; *Barghman v. Portman,* 12 Ky. Law 342, 14 S. W. 342; *San Antonio Brewing Ass'n v. Brents,* 39 Tex. Civ. App. 443, 88 S. W. 368; *Hecht v. Acme Coal Co.,* 19 Wyo. 18, 113 Pac. 788, 117 Pac. 132, Ann. Cas. 1913E 258, 34 L. R. A. (N. S.) 773; *Goodrum Co. v. Potts-Thompson Liquor Co.,* 133 Ga. 776, 66 S. E. 1081, 26 L. R. A. (N. S.) 498; *Shreveport Ice & Brewing Co. v. Mandel Bros.,* 128 La. 314, 54 South. 831; *Gaston v. Gordon,* 208 Mass. 265, 94 N. E. 307.

The tenant of a saloon, in the absence of a stipulation therefor, is not entitled to an abatement in rent because of the passage of a law making the sale of liquor illegal. *Barghman v. Portman, supra; Teller v. Boyle,* 132 Pa. St. 56, 18 Atl. 1069; *Kellogg v. Lowe,* 38 Wash. 293, 80 Pac. 458, 70 L. R. A. 510; *Fleming v. King,* 100 Ga. 449, 28 S. E. 239; *Taylor v. Finnigan,* 189 Mass. 568, 76 N. E. 203, 2 L. R. A. (N. S.) 973; *Miller v. Maguire,* 18 R. I. 770, 30 Atl. 966; *Christian Moerlein Brewing Co. v. Roser,* 169 Ky. 198, 183 S. W. 479.

In effecting a lease of real estate to be used for saloon purposes, it is the duty of the lessee to have inserted in the lease such clause as will protect him in event the sale of liquors on the premises during the lease may be prohibited by law. *Houston Ice & Brewing Co. v. Keenan, supra; Abadie v. Berges,* 41 La. Ann. 281, 6 South. 529; *Miller v. Maguire,* 18 R. I. 770, 30 Atl. 966; *Kerley v. Mayer,* 10 Misc. Rep. 718, 31 N. Y. Supp. 818; *Hecht v. Acme Coal Co., supra; Oldfield v. Angeles Brewing & Malting Co.,* 62 Wash. 260, 113 Pac. 630, 35 L. R. A. (N. S.) 426.

A lease of property permitting its use for saloon purposes is not nullified by the adoption of a statute forbidding fur-

ther sales of liquor in the locality. *Hayton v. Seattle Brewing & Malting Co.*, 66 Wash. 248, 119 Pac. 739, Ann. Cas. 1912C 1050, 37 L. R. A. (N. S.) 432.

Respondent's position is that the performance of the contract is excused by a supervening condition brought about by the operation of a change in the law, making its performance illegal. Great reliance is placed by appellants upon our own case of *Hayton v. Seattle Brewing & Malting Co., supra.* That case involved a lease containing a permission to use the premises for a retail saloon business. There was nothing in it indicating that it was the principal object of the lease and intention of the parties that it be used for that purpose. During the term of the lease, Mount Vernon, wherein the leased property was situate, voted to prohibit saloons under the local option laws then in force. The lessee then abandoned the premises and refused to pay rent, claiming an eviction by operation of law in that the retail saloon business had been prohibited. We said:

"It is argued that the purpose for which the premises were leased becoming unlawful upon the result of the local option election being ascertained, the lease contract thereby ceased to be binding upon appellant. It seems to us that this argument is rested upon an erroneous view of the effect of the language of the lease relating to the use of the premises by appellant. It is apparently assumed by counsel for appellant that the provisions of the lease above quoted restrict the use of the premises to saloon business. We think that provision does not have such an effect. It is only permissive in that respect, and clearly does not prevent appellant from using the premises for any lawful purpose. The decisions of the courts appear to be harmonious in support of the view that, under such circumstances as are disclosed by this defense, the lessee cannot regard the lease as terminated by the changed legal status of the liquor traffic, and thus avoid payment of the rent agreed upon by the terms of the lease."

We there clearly based our decision upon the permissive character of the use granted by the lease, and that it did not prevent appellant (lessee) from using the premises for

any lawful purpose, and was not intended to restrict the use of the premises to saloon purposes.

We are urged to keep in mind, in view of that decision, that, under the terms of the lease here involved as modified, the demised premises may be used during the entire term for restaurant, cigar, and bootblack business, even though its use for a saloon where intoxicating liquors are sold may be prohibited.

There is no doubt that there are courts of the highest authority sustaining appellants' contentions. Cases are numerous but conflicting. It is well settled law, however, that, while the business of selling intoxicating liquors may be lawful at a given time and place, it is equally true that the business is one that the law only countenanced and always held subject to regulation and control or prohibition under the police power of the state. It is a privilege that creates no vested rights, and that the state can and will give, withhold, or withdraw at pleasure. We think it must be conceded that the covenant by the lessee that it "should not use said premises for any other purpose than that of a saloon" was not wholly modified into a purely permissive use therefor by the modification, engrafted thereon after the lease had gone into effect, that the lessee might sublet a portion of the demised premises for a restaurant, cigar, and bootblack business. It is apparent that the principal use of the premises desired by both parties was that of a saloon business. The other businesses were only secondary and incidental thereto. It is shown in another similar case now before us that the charter of Seattle limited the number of saloons to three hundred and fifteen, distributed in three hundred and fifteen locations in the city, and limited the number in a block; and the subject-matter of this lease was one of those permitted locations and a very prominent one. Thus a sort of monopoly for saloons was created in certain locations, the business thereby made very lucrative, and such locations thereby com-

manded the highest rentals for such use. It was, therefore, to the interest of the lessor that the premises be rented for and devoted to that use principally, and such was manifestly the chief object of both parties, and the condition, therefore, was not a special condition for the benefit of the lessor only, but a mutual covenant. In *Beebe v. Tyra*, 49 Wash. 157, 94 Pac. 940, we held that "a stipulation *prohibiting* the lessee from selling any intoxicating liquors on the premises was only a condition subsequent for the benefit of the lessor." But a stipulation for the use for such purpose is otherwise.

Nor are we impressed with the idea advanced by appellants that the "saloon business" does not necessarily mean a business of selling intoxicating liquors, but may mean a business or place for the sale of nonintoxicating drinks. The word "saloon" had acquired a very definite general meaning in this and neighboring states as a place where intoxicating liquors were sold, and was generally so understood. It was generally so designated in the license statutes. The fact that what are commonly called "soft drinks" are also generally sold at such places does not alter the character of such places as "saloons," nor is a place where soft drinks only can be sold commonly known as a "saloon." Furthermore, the condition in the lease that the lessee should purchase beer and malt liquors only of the appellant brewing company, and that it should sell all beer and malt liquors that lessee should sell, of itself would fix the character of the saloon contemplated by both lessor and lessee as a saloon where intoxicating liquors would be sold. *Kahn v. Wilhelm*, 118 Ark. 239, 177 S. W. 403; *Greil Bros. Co. v. Mabson*, 179 Ala. 444, 60 South. 876, 43 L. R. A. (N. S.) 664.

It is a general rule of law, as said in *Cowley v. Northern Pac. R. Co.*, 68 Wash. 558, 123 Pac. 998, 41 L. R. A. (N. S.) 559, quoting from an old case:

"That no contract can properly be carried into effect which was originally made contrary to the provisions of law, or which, being made consistently with the rules of law at the

time, has become illegal in virtue of some subsequent law, are propositions which admit of no doubt."

While, when this lease was entered into, it was lawful to lease premises for the sale of intoxicating liquors in the state and in the place covered by this lease, before the term expired it became unlawful for saloons to sell intoxicating liquors, and by an express provision of the law, Initiative Measure No. 3, § 5 (Laws 1915, p. 2, § 5; Rem. Code, § 6262-5), it was made illegal to lease premises for the purpose of such business or to knowingly permit the use of leased premises for such purpose. This change in the law annulled and avoided that portion of the lease requiring, or as appellants say, *permitting* the use of the demised premises for the conducting of a retail saloon, or the sale of intoxicating liquors as contemplated.

It is also true, as asserted by appellants, that the lessor did not guarantee that the lessee should be preserved the continuous right to conduct a retail saloon for the sale of intoxicating liquors. This the lessor could not do. To so contract would have been just as unavailing by reason of the principle that the state, in the exercise of its undoubted police power, could always intervene and render such a guaranty nugatory, and it would be unenforcible as against public policy. Probably, if there had been a clause in the contract of lease stipulating that, in the event that the saloon business should become unlawful in that location, the lease should terminate at once but the lessee should pay all rents reserved for the term, no different question would be presented. Appellants, however, would have the lease construed as so implying, and urge that the lessee could have protected itself against such a contingency but did not, and that the condition to conduct a saloon on the premises was a condition for the exclusive benefit of the lessors. Exactly, and so could the lessors have protected themselves by a provision contrary to the kind above supposed; and we do not agree that the provision in such a lease as that before us, with the principal purpose that lessee

should conduct a saloon on the leased premises, constitutes a condition for the use of the premises exclusively for the benefit of the lessor, which it might either enforce or waive as it saw fit, or as circumstances demanded.

Although, as said, many cases are found which put the entire burden and hazard upon the lessee leasing premises for saloon purposes which afterwards becomes unlawful by operation of law, either locally or generally, many of the cases are based upon the permissive character of the use, and others are not well grounded upon either reason or law.

The broad principle generally applicable is that stated in *Cowley v. Northern Pac. R. Co., supra,* and cases cited therein. That principle has been applied to contracts of this character, and it has been held, for that reason, that the rent contracted for could not be collected. *Heart v. East Tennessee Brewing Co.,* 121 Tenn. 69, 113 S. W. 364, 130 Am. St. 753, 19 L. R. A. (N. S.) 964; *Kahn v. Wilhelm* and *Greil Bros. Co. v. Mabson, supra.*

Where the performance of an executory contract which was lawful in its inception is made unlawful by subsequent enactment, the agreement is thereby dissolved and the parties discharged from its obligations. Hammon, Contracts, § 210; 3 Elliott, Contracts, § 1901; Pomeroy, Contracts, § 280; Bishop, Contracts, § 594; Clark, Contracts, § 681; Brantly, Contracts (2d ed.), p. 482; Lawson, Contracts, §§ 423, 424; 9 Cyc. 629; Wharton, Contracts, § 305; *Gray v. Sims,* Fed. Cas. No. 5,729.

But, appellants urge, they have waived the condition that a saloon business should be conducted on the premises and have demanded that lessee continue in possession and use the premises for a restaurant, cigar stand and bootblack stand. The original lease was for a saloon. A very large monthly and total rental was reserved in the lease for that purpose. Afterwards the lease was somewhat enlarged in terms by the permission to sublet a portion for the other purposes. We

do not know what part, if any, of the rental which lessee agreed to pay could be considered as the rental for those other businesses. It takes two parties to make a contract. The lessee contracted to rent certain premises and use them for a saloon, originally, and contracted definitely for that purpose, as did lessors also. The lessee has definitely refused to accept lessors' waiver of the condition to conduct an unlawful business, and one of the parties can no longer perform its contract with the lessee, viz., to furnish beer and malt liquors for sale. It would certainly be harsh and inequitable for a court to force a contract upon either party that neither party contemplated when they contracted in the premises. *Kahn v. Wilhelm, supra.*

All things considered, and without multiplying reasons or authorities, and regardless of authorities to the contrary, we think justice and equity are with the respondent.

We are impelled to hold that the prohibition law, by its terms and in its general effect, dissolved such a lease as the one before us and discharged the parties from its obligations.

Judgment affirmed.

MORRIS, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.