(10 Misc. Rep. 718.)

KERLEY v. MAYER.

(Common Pleas of New York City and County, General Term. January 7, 1895.)

1. LEASE—UNLAWFUL PURPOSE—SELLING LIQUOR.

A lease which provides that the premises were let "to be used and occupied only as a strictly first-class liquor saloon" is not a letting for an unlawful purpose merely because a liquor license had not been obtained,

nothing appearing in the lease or in the evidence to show that the business should be carried on without a license.

**2. SAME—RELEASE OF LESSEE—MATTERS HAPPENING AFTER RELEASE.**
   Laws 1892, c. 401, forbidding the sale of liquor within 200 feet of a church or schoolhouse, passed, after the execution of a lease for saloon purposes of premises within such description, but before the commencement of the term, does not release the lessee, as he is not deprived of the beneficial use of the premises.

**3. SAME—RESTRICTIONS.**
   A provision in a lease that the premises are "to be used and occupied only as a strictly first-class liquor saloon," does not restrict the use to saloon business, but merely restricts the character of that business.

Appeal from trial term.

Action by Abram P. Kerley against Oscar Mayer for rent reserved by a written lease made for a term of five years from May 1, 1892, at a rental of $2,000 per annum, payable monthly in advance. Plaintiff sued as assignee for the first six months' rent. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Einstein & Townsend (B. F. Einstein, of counsel), for appellant.
Havens & Beebe, for respondent.

DALY, C. J.    One of the objections to the enforcement of the lease under which the rent is claimed, and which is dated April 26, 1892, is that the attorneys and agents of the lessor, Messrs. Havens & Beebe, who assumed to execute the lease on his behalf, were not lawfully authorized thereunto by writing.    2 Rev. St. p. 135.    The only written authority produced on the trial was a power of attorney which, it was conceded, was not received from the plaintiff by his agents until several months after they had signed the lease, although it bore date June, 1889; but they testified that long prior to the execution of a lease they had written authority under seal to make it, although after search for such paper it could not be found, and they were allowed to give secondary evidence of its contents, which appeared to be similar to those of the written power which was produced.    Both of them testified on this point, and they were not contradicted.    It is argued, however, by appellant that the identity of contents and date between the lost paper and the writing produced on the trial shows that there was but one instrument, and that it was the one produced; and, the evidence being that it was in possession of the principal at the time of the execution of the lease by Havens & Beebe, the inference was that it had been revoked.    The evidence does not establish that the lost paper (or papers, for the testimony showed that there were two different powers of attorney originally executed) was identical with the writing produced, but, rather, that the latter was a later instrument, antedated to agree in time with the original power.    The point which appellant urged most strongly on the trial was that the plaintiff, having offered the writing as an authority for the execution of the lease, could not recede from that position and offer proof of any previously executed paper; but that contention was manifestly untenable.    As the testimony of Messrs. Havens & Beebe, concerning

the earlier authorization to make the lease, was uncontradicted, the court was justified in charging the jury that the uncontradicted evidence was that they had authority, and the appellant's exception to that instruction was not well taken. He now insists that the question of the credibility of those witnesses should have been submitted to the jury, but he did not ask it at the trial. The request which he did make, that the jury be charged, "if they find that Havens & Beebe did not have written authority to sign the lease in question at the time of the execution of the lease, the finding must be for the defendant," did not present the question of veracity. The principal objection made by defendant to the enforcement of the lease arises upon the clause that the premises were let "to be used and occupied only as a strictly first-class liquor saloon." It is claimed that, as there was no license then existing for such business on the demised premises, it was a letting for an unlawful purpose. But nothing appears in the lease or in the evidence to show that it was intended that a liquor business should be carried on there without a license. On the contrary, evidence of the previous negotiations showed that the procurement of a license was contemplated. The tenant was to carry on the business, and was the party to procure the license, which he could not do until he had a lease. The execution of a lease might therefore properly precede the granting or even the application for a license. After the execution of the lease, and before the commencement of the term, to wit, on April 30, 1892, an act of the legislature went into effect which provided that "no person or persons who shall not have been licensed prior to the passage of this act shall hereafter be licensed to sell strong or spirituous liquors, wine, ale or beer in any building not used for hotel purposes and for which a license does not exist at the time of the passage of this act which will be on the same street or avenue and within 200 feet of a building occupied exclusively as a church or schoolhouse." Laws 1892, c. 401, § 43. The premises in question were so situated, and were not licensed at the time of the passage of the act, nor used for hotel purposes, and the tenant had not been licensed prior to the enactment of the law; and it appeared that his application for a license for the demised premises was refused by the board of excise. Upon this state of facts it is contended by appellant that the lessee, being deprived of the beneficial use and enjoyment of the premises under the terms of the lease between the execution of the lease and the commencement of the term, is thereby released from the payment of rent, and that the case is governed by the principle which released the lessee where the demised premises were destroyed by fire before the commencement of the term. The lessee was not deprived of the beneficial use of the premises by the failure to procure a license to carry on a liquor saloon. They might be used for any lawful purpose. He contended on the trial that the lease was conditioned upon his obtaining a license. Evidence was taken on that point, and the question submitted to the jury, with a result adverse to his contention. It was assumed by the court—most favorably to him upon the submission of such a question to the jury—that he was restricted by the lease to the saloon business. I do not so regard the clause in question. The

restriction is manifestly upon the class of liquor saloon,—that it should be "only first-class." It could not have been the intention of the parties, in view of the contingencies affecting the procurement of a license,—which rests in the discretion of public officers, and, above all, was subject to legislative control,—that the lessee might have to pay $2,000 per annum for five years for premises which were to remain idle unless he could open a saloon there. The lease itself indicated the contrary, for it provides in another clause against the use of the premises for a "disreputable or extra hazardous" purpose of business; and we find that the lessor, by his agents, expressly waived any such restriction early in the term, for their letter of July 1st, two months after it was to commence, required the lessee to "pay the rent of the premises, and proceed to occupy the same in some manner, within the next week," under penalty of the lessor's re-entering and reletting. It is only when the lessee is deprived without his fault of the use of the premises for any purpose that rent ceases; and if the lessee were deprived in this instance it was his own fault, for he should have stipulated against the contingency of a refusal of a license. It further appears that the lessee took possession of the premises, being an undertenant; that about a year after the term commenced a license was issued to the latter under an amendment of the statute (Laws 1893, c. 480, § 11), and the saloon was opened, and the rent thereafter accruing paid; and the only question here is whether the lessee is liable for that which accrued while the license was withheld. For the reasons above given we think that he was. Judgment should be affirmed, with costs. All concur.