## WARM SPRINGS CO. v. SALT LAKE CITY

No. 3020. Decided May 18, 1917. Rehearing denied June 21, 1917.
(165 Pac. 788.)

1. MUNICIPAL CORPORATIONS—RENT FOR PROPERTY LEASED BY CITY—EVICTION BY ORDINANCE. Where premises belonging to a city were leased for the purpose of conducting a bathing resort, with the provision that a portion of the premises might be leased or sublet for saloon or bar purposes, and subsequently, pursuant to Laws 1911, c. 106, an ordinance was passed by the city by which the carrying on of the saloon business on such premises was prohibited, the mere fact that the saloon business was prohibited did not constitute an eviction, and the defendant was not thereby released from paying rent, and was not entitled to any abatement thereof, since if the lessee desired to protect itself against the payment of rent in case the right to maintain a bar on the premises should be prohibited it should have provided for that emergency in the lease. (Page 64.)

2. MUNICIPAL CORPORATIONS—RENT FOR PROPERTY LEASED BY CITY—EVICTION. While the city in entering into the lease did so as proprietor of the property, and is governed by the same law and rules as other proprietors, in passing and enforcing the ordinance, pursuant to the provisions of Laws 1911, c. 106, it acted entirely in a governmental capacity, and as an arm of the state government, and had no more right to disregard the provisions of that chapter than a private citizen, and is not liable for the consequences of such governmental act. (Page 64.)

3. MUNICIPAL CORPORATIONS—LEASE BY CITY—STATUTE. If a city should guarantee its lessee the right to continue the saloon business in violation of Laws 1911, c. 106, providing that licenses permitting the sale of intoxicating liquors should not be issued outside the limits of the business district of a city or town, and requiring cities to pass ordinances fixing such limits for the purposes of the act, the lease would be void, since municipal corporations have no power to make contracts which would embarrass or control their legislative powers and duties. (Page 65.)

4. LANDLORD AND TENANT—RENT—PARTIAL EVICTION. Generally a tenant may not hold possession of premises, and then sue for an abatement of rent on the theory of partial eviction. (Page 66.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by the Warm Springs Company against Salt Lake City.

Judgment dismissing complaint.   Plaintiff appeals.

AFFIRMED.

*D. H. Wenger* for appellant.

*H. J. Dininny,* City Attorney and *W. H. Folland* and
*M. Davis* Asst. City Attys. for respondent.

FRICK, C. J.

The plaintiff in this action seeks to recover certain moneys
which it is alleged the defendant city wrongfully obtained
from it for rental of certain premises leased to the plaintiff
by the city.   In view that the court's findings of fact are not
assailed, and as they correctly reflect the issues and the evi-
dence, and because the conclusions of law and judgment which
are based upon the findings are vigorously assailed, we insert
the court's findings, the material parts of which read as fol-
lows:

"That on the 21st day of February, 1905, pursuant to a
resolution of the mayor and city council, the said Salt Lake
City, defendant herein, entered into an agreement in writing
with one Maxwell R. Brothers, his executors, administrators
and assigns, whereby said defendant did lease and let unto
Maxwell R. Brothers, for a period of ten years, the following
described real estate and premises, to wit:  All that property
situate in Salt Lake City, county of Salt Lake, state of Utah,
described as block 157, plat 'A,' Salt Lake City survey, known
as the Warm Springs property, including the springs and
land inclosed by fence, but not including the gravel beds on
said tract; to have and to hold the said premises with their
appurtenances unto the said Maxwell R. Brothers, his exe-
cutors, administrators and assigns, from the 31st day of
March, 1906, to and including the 31st day of March, 1916, for
the purpose of conducting a bathing resort, with the privilege
of subletting a portion of said premises for bar purposes; and
in consideration of the said leasing and letting of said premises
to him as aforesaid, the said Maxwell R. Brothers as aforesaid
agreed to pay the defendant as rent for said premises the sum
of $200 per month for each and every month of said term.

Said lease as set forth in defendant's answer is hereby referred to and made a part of these findings of fact. That on or about the 19th day of January, 1906, the said Maxwell R. Brothers assigned said lease to the said Warm Springs Company, the plaintiff herein, and said plaintiff was, during the whole of said term of ten years, the successor in interest of the said Maxwell R. Brothers, with the knowledge, acquiescence and consent of said Salt Lake City, and the said plaintiff at all times during said term paid said sum of $200 per month rent as in said lease provided, and has complied with all other covenants and conditions of said lease, as the assignor of said Maxwell R. Brothers, and the said plaintiff was at all times entitled to sublet a part of said premises for bar purposes. That under said agreement and lease the plaintiff herein, upon the payment of said sum of $200 per month, and as consideration therefor, was to have the privilege of conducting a bathing resort, leasing or subletting a portion of said premises for saloon or bar privileges. That the reasonable rental value of said premises as a bathing resort was $100 per month, and the rental value of said saloon for bar purposes was $100 per month, and that said plaintiff at all times during the term of said lease was able to let and lease said premises for bar purposes at the rate of $100 per month. That pursuant to said agreement the plaintiff did sublet a part of the said premises, known as the saloon building for bar purposes, beginning on the 21st day of March, 1906, and continuously until the 20th day of June, 1911, at the rate of $100 per month, and that after the 20th day of June, 1911, the said plaintiff was prevented from further leasing and subletting said premises or any part thereof for bar purposes for the reason that said real estate, as above described, and the surrounding premises were excluded by city ordinance of Salt Lake City from the district in which intoxicating liquors might be sold, and that thereafter until the end of said term of said lease said premises were excluded by reason of said ordinance passed pursuant to the authorization of the Legislature of the state of Utah, from the business district in which intoxicating liquors might be sold. That after said exclusion by said city ordinance the

said defendant refused to pay to the plaintiff any rebate or bonus because of said exclusion. That on the 6th day of April, 1916, the plaintiff herein presented its claim against said city for the sum of $5,700, which said claim was refused by said defendant, and that after the 20th day of June, 1911, to the end of said rental term said rent was paid by plaintiff under protest.''

The conclusions of law are as follows:

''That said city in its governmental and legislative capacity did rightfully pass an ordinance under proper authority from the state of Utah, excluding said property above described from the district in which intoxicating liquors might be sold. That in its private and personal capacity said city did enter into a lease with said parties as aforesaid, and that defendant did collect rents from said plaintiff as set forth, by the provisions of said lease heretofore referred to. That said lease in question does not contain a restrictive clause, but does contain a permissive clause which permitted the said plaintiff to rent a part of said premises for bar purposes. That there was no guaranty or warrant by which said defendant was bound to continue the permissive privilege after said ordinance excluding said property from the restricted district was passed. That said defendant did lawfully and legally collect said rent from said plaintiff, and that therefore said plaintiff has no cause of action against the defendant in the premises.''

Judgment was entered dismissing the complaint, from which plaintiff appeals.

The assignments of error are all directed against the conclusions of law and judgment. Plaintiff's principal contention arises upon the proviso in the lease which reads as follows: ''Provided, however, the said party of the second part may sublet a portion of said premises for bar purposes.'' In 1911 the Legislature of this state passed chapter 106, Laws Utah 1911, p. 152, in which it was provided that licenses permitting the sale of intoxicating liquors shall not be issued or granted ''outside of the limits of the business district of any city or town. The mayor and city council in their respective cities * * * shall from time to time determine and fix such limits

for the purposes of this act.'' Pursuant to that chapter an ordinance was passed by the defendant city in which the district in which the bar was maintained by plaintiff was declared to be outside of the business district of the city and within which a license to sell intoxicating liquors would not thereafter be granted. The plaintiff, therefore, was unable to obtain a license to sell intoxicating liquors upon the leased premises, and hence it lost the right to sublet a part of the premises for bar purposes as provided in the clause of the lease we have quoted. The plaintiff did not surrender nor offer to surrender the demised premises, but paid that portion of the rent which it is contended the bar privilege was worth under protest, and by this action seeks to recover back the rent thus paid.

Plaintiff's counsel, as we understand him, contends that the district court erred in denying recovery upon the grounds: (1) Because the city, by adopting and enforcing the ordinance in question, by its own act, deprived plaintiff of subletting a part of the demised premises for bar purposes, and hence it ''ex equo et bono'' cannot retain that portion of the rent which represents the value of the bar privilege; and (2) that by the act of the defendant city the plaintiff was in legal effect evicted so far as the right of maintaining a bar is concerned, and for that reason the defendant city may not retain that portion of the rent demanded by the plaintiff. Counsel, in support of his contention, cites the following cases: *Boston Molasses Co.* v. *Commonwealth,* 193 Mass. 387, 79 N. E. 827; *Tallman* v. *Murphy,* 120 N. Y. 345, 24 N. E. 716; *Lynch* v. *Baldwin,* 69 Ill. 210; *Grabenhorst* v. *Nicodemus,* 42 Md. 236; *Allsman* v. *Oklahoma City,* 21 Okl. 142, 95 Pac. 468, 16 L. R. A. (N. S.) 511, 17 Ann. Cas. 184; *Pearson* v. *City of Seattle,* 14 Wash. 438, 44 Pac. 884. Counsel also refers us to 28 Cyc. 674. We cannot, nor is it necessary for us to, pause here to point out the distinction between those cases and the case at bar. It must suffice to say that the decisions of the foregoing cases do not authorize a recovery in a case like the one at bar. We have found one case, however, which is not cited by counsel, namely, *Heart* v. *East Tenn. Brewing Co.,* 121 Tenn. 69,

113 S. W. 364, 19 L. R. A. (N. S.) 964, 130 Am. St. Rep. 753, in which it was held that a lease on certain premises which were leased for saloon purposes terminated when the prohibitory law, which was passed after the lease had been entered into, went into effect. The decision is based upon the ground that when the prohibitory law went into effect the business of conducting a saloon was unlawful; that the premises were therefore leased for an unlawful purpose, and hence the lease terminated, and the tenant was released from paying rent. The great weight of authority as we shall see, is however, contrary to the case just referred to. In the following, among other, cases it is held that where premises are leased for saloon purposes, and, pending the lease, a law is passed by which the right to deal in intoxicating liquors is prohibited, and hence a saloon business may no longer be carried on, the tenant is not, for that reason, released from paying rent for the demised premises, and that in case the premises in connection with the saloon business are also used for other purposes, or that they thereafter can be used for such other purposes, to prevent the tenant from carrying on the saloon business does not amount to an eviction and that he is not entitled to an abatement of the rent. *Lawrence* v. *White,* 131 Ga. 840, 63 S. E. 631, 19 L. R. A. (N. S.) 966, 15 Ann. Cas. 1097; *O'Byrne* v. *Henley,* 161 Ala. 620, 50 South. 83, 23 L. R. A. (N. S.) 496; *San Antonio Brewing Ass'n* v. *Brents,* 39 Tex. Civ. App. 443, 88 S. W. 368; *Kerley* v. *Mayer,* 10 Misc. Rep. 718, 31 N. Y. Supp. 818, affirmed in 155 N. Y. 638, 49 N. E. 1099. Quite a number of cases in which the same doctrine is held are cited by the annotator in the notes to the case in 19 L. R. A. (N. S.) 966. See, also, 1 Tiffany L. & T. section 182, p. 1160, and 2 Tiffany L. & T. section 185, p. 1289. In the case of *Lawrence* v. *White,* supra, Mr. Justice Lumpkin, in speaking for the court, says:

"The question in the case is whether the lessee of a hotel, including a barroom was entitled to a reduction or proportional abatement of the agreed rental, because during the term of the lease the Legislature of the state enacted a law prohibiting the sale of alcoholic, spirituous, malt, or intoxicating liquors, and thus the bar could no longer be used for that purpose. The adjudicated cases with unusual uniformity answer this question in the negative, though they do not all give the same reasons for the ruling. It has been very generally held that the enforcement by

public officers of restrictions or conditions in regard to the use of leased premises does not amount to an eviction of the tenant.''

In the case of *O'Byrne* v. *Henley,* supra, the law in the headnote, which correctly reflects the opinion, is stated in the following language:

''Where premises are leased for saloon purposes at a time when it was lawful to sell intoxicants and the premises are used by a lessee as a saloon for the sale of intoxicants, soft drinks, etc., the passing of a prohibition law prohibiting the sale of intoxicants does not have the effect to release the lessee from liability for future rent, as his business is not totally destroyed, since the use of the word 'saloon' in the lease, while including the sale of intoxicants, does not exclude the sale of other things, and the business is not totally destroyed.''

It is not necessary to quote further from the cases. In the case at bar the premises were leased for the principal purpose of conducting a bathing resort, and the business of carrying on the saloon was a mere incident to the principal business. When, therefore, the ordinance went into effect by which the carrying on of the saloon business on the demised premises was prohibited the tenant was still permitted and continued to conduct the principal business for which the premises were used, namely, the conducting of a bathing resort. Under all of the authorities, therefore, the mere fact that the saloon business was prohibited did not constitute an eviction, and the plaintiff was not thereby released from paying the rent, nor was it entitled to any abatement thereof. If the plaintiff desired to protect itself against the payment of rent in case the right to maintain a bar on the premises should be prohibited by law, it should have provided for that emergency in the lease. Not having done so, it cannot now complain.

It is seriously contended, however, by plaintiff's counsel, that the defendant city, in passing and enforcing the ordinance in question, by its own act deprived the plaintiff of its right to sublet for bar purposes, and for that reason the city is required to abate the rent as claimed by plaintiff. We have already pointed out that the city, in passing and enforcing the ordinance in question, did so in obedience to the command contained in chapter 106, supra. While it is true, as plaintiff's counsel suggests, that the city, in entering

into the lease, did so as a proprietor of property, and hence is governed with regard to that matter by the same law and rules as other proprietors would be, counsel, however, entirely overlooks the fact that the city, in passing and enforcing the ordinance, acted entirely in a governmental capacity and as an arm of the state government. The city was bound by the provisions of chapter 106, the same as all other persons, and it had no more right to disregard the provisions of that chapter than the plaintiff. If, therefore, the city had undertaken to contract or enter into an agreement with the plaintiff so as to relieve it from the effects of chapter 106, such an agreement would have been void and of no effect. The law respecting that subject is very clearly stated by the author in 3 McQuillin Mun. Corps. section 1169, in the following words:

"The settled rule is that municipal corporations have no power to make contracts which will embarrass or control their legislative powers and duties. A city cannot by contract deprive itself of any of its legislative powers, and hence cannot agree that a sidewalk should only be graded to a certain depth. A common council 'cannot bargain away or divest itself of the right to make reasonable laws, and to exercise the police power whenever it becomes necessary to conserve or promote the health, safety or welfare of the community.' So, power given to contract respecting a particular thing does not confer power, by implication, to contract even with reference to such thing so as to embarrass and interfere with its future control of the matter, as the public interests may require."

If the city had entered into a lease in which it had guaranteed the plaintiff the right to continue the saloon business in the teeth of chapter 106, the lease to that effect would have been void. What could not be accomplished directly, therefore, cannot be accomplished indirectly by com-    3 pelling the city to pay back part of the money it had received as rent for the demised premises. If by some unlawful act the city in its capacity as proprietor had interfered, or if it had entered into an enforceable covenant not to do so, and had, nevertheless, interfered with plaintiff's enjoyment of the premises, the case would be quite different. The distinction between acting in a governmental capacity and as a mere proprietor of property is made quite clear in the case of *Boston Molasses Co.* v. *Commonwealth,* supra. In that case the com-

monwealth covenanted as a proprietor of property merely, and hence it was held that it was liable as a proprietor. In this case the act by the city which is complained of was a governmental act, and hence the city is not liable for the consequences of that act.

The law also seems to be that, ordinarily at least, a tenant may not hold on to the premises and then sue for an abatement of the rent upon the theory of a partial eviction. 1 Tiffany L. & T. section 182, p. 1160 et seq., under the title of "Partial Eviction."

We desire to add in conclusion that the case of *Lawrence* v. *White,* supra, is a very carefully considered case. The other cases we have cited, and in which the doctrine laid down in the Georgia case is followed, are also all well considered, and, in our judgment, there logically is no escape from the conclusions reached in those cases.

The judgment is affirmed, with costs to the defendant.

McCARTY and CORFMAN, JJ., concur.