146 P.2d 883

**WOOD v. BARTOLINO et al.**

No. 4805.

Supreme Court of New Mexico.

March 2, 1944.

H. M. Rodrick, of Raton, for appellant.

G. W. Robertson (of Crampton & Robertson), of Raton, for appellees.

BRICE, Justice.

The appellant leased a building to appellees "for use solely as a filling station and not for restaurant or lunch counter purposes," at a rental of $100 per month for a term of five years commencing June 1, 1939. It was operated by sub-lessees until February 1, 1941, and thereafter until July 1, 1942 by appellees, when the latter ceased its operation and offered to restore possession of the premises upon the alleged ground that the lease contract had been terminated because of "commercial frustration" resulting from government rules, regulations, and orders freezing automobiles, tires and tubes and rationing the sale of gasoline, so that it was "impossible and impracticable to use or operate the leased premises as a filling station" at any time after the first of December, 1942; and that such "impossibility and impracticability" still continued and would continue throughout the term of the lease.

The findings of the trial court are unnecessarily voluminous, and are replete with findings of evidentiary facts. Of the facts found by the court, which we deem necessary to a decision, the following is the substance:

The filling station in question is located near the center of the business district of Raton, New Mexico, on the main highway passing through that city. Appellees' customers were mainly tourists and commercial travellers who used this highway. Ordinarily tourist travel is heavy, beginning in May and continuing through the summer and autumn. The Federal rules and regulations which limited and restricted the sale of tires, tubes and automobiles became effective about the first of 1942 and have since continued in effect. These regulations so seriously reduced the operation of motor vehicles that the travel of tourists and commercial travellers practically and abruptly ceased.

As a direct and proximate consequence of the governmental rules, regulations and orders concerning the "freezing" of tires, tubes and automobiles, it became and was impossible and impracticable to use or operate the leased premises as a filling station during the months of July, August, September, October and November, 1942, and by reason thereof, and of the rationing of gasoline, it became and was impossible and impracticable to use or operate the leased premises as a filling station during the months of December, 1942, January 1943, or any time thereafter, and that such impossibility and impracticability still continues and will continue throughout the term of the lease contract.

■ We, of course, take judicial notice of the Federal laws, rules and regulations mentioned, and of the general public knowledge that such laws, rules and regulations have limited and restricted the sale of tires, tubes, automobiles and gasoline so that the income from such businesses, where not operated in conjunction with garages, lunch counters, etc., have been seriously reduced.

The parties, at the time the lease contract was entered into, did not contemplate, and could not reasonably have contemplated, that such laws, rules and regulations would be enacted, promulgated or enforced, or that they would materially and substantially change the conditions of the business operated in the leased premises.

Appellees' evidence shows that the total income for the eleven months during which the filling station was operated by them in 1941 was $1,568.93, and that during the same time the expense of operation was $2,096.69, leaving a deficit of $527.76, or an average deficit of $47.98 per month. The average monthly deficit for the five month period from February 1st to July 1st, 1941, and for the same period in 1942 (the only months for which figures are available for comparison) is $69.39 and $124.22 respectively. For the six months (January 1 to July 1) during which the station was operated in 1942 the earnings were $608.12 and the expense of operation $1164.86, leaving a deficit of $556.74, which was an average of $92.79 per month. During the months of May and June 1942 the deficit was respectively $135.71 and $121.08.

It would appear from the facts just stated that it was not impossible to operate the filling station prior or subsequent to the effective dates of the laws, orders and regulations of the Federal Government to which reference has been made; but that from the beginning of its operation by appellees, it was impracticable in the sense that it could only be operated at a loss, and that the effect of the enforcement of the Federal rules, laws and regulations only made bad matters worse by increasing the deficit of a worthless business.

■ The doctrine of "commercial frustration," or, as more often called by the courts of this country, the doctrine of "implied condition," has been developed by a process of evolution from the rules: (1) A party to a contract is excused from per-

formance if it depends upon the existence of a given person or thing, if that person or thing perishes. The Tornado, 108 U.S. 342, 2 S.Ct. 746, 27 L.Ed. 747. (2) A party to a contract is excused from performance if it is rendered impossible by act of God, the law, or the other party. Dermott v. Jones, 69 U.S. 1, 2 Wall. 1, 17 L.Ed. 762. The rules are otherwise stated, as follows:

"(1) Impossibility due to domestic law;

"(2) Impossibility due to the death or illness of one who by the terms of the contract was to do an act requiring his personal performance.

"(3) Impossibility due to fortuitous destruction or change in character of something to which the contract related, or which by the terms of the contract was made a necessary means of performance." 6 Williston on Contracts, Sec. 1935.

Regarding a fourth and a fifth class, Williston states:

"The fourth class of cases, to which allusion was made above as standing on more debatable ground, comprises cases where impossibility is due to the failure of some means of performance, contemplated but not contracted for.

"The fifth class does not strictly fall within the boundaries of impossibility. Performance remains entirely possible, but the whole value of the performance to one of the parties at least, and the basic reason recognized as such by both parties, for entering into the contract has been destroyed by a supervening and unforeseen event. This does not operate primarily as an excuse for the promisor, the performance of whose promise has lost its value, but as a failure of consideration for the promise of the other party, not in a literal sense it is true, since the performance bargained for can be given, but in substance, because the performance has lost its value. The name 'frustration' has been given to this situation. Until recently, it had received little clear recognition, but its adoption seems involved in some decisions, and their justice is plain." Id. Sec. 1935.

Regarding the meaning of "impossibility" as used in the rules that excuse the non-performance of contracts, it is stated:

"As pointed out in the Restatement of Contracts, the essence of the modern defense of impossibility is that the promised performance was at the making of the contract, or thereafter became, impracticable owing to some extreme or unreasonable difficulty, expense, injury, or loss involved, rather than that it is scientifically or actually impossible. * * * The important question is whether an unanticipated circumstance has made performance of the promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor." Id. Sec. 1931.

We need not determine whether the doctrine of "commercial frustration" can, under the circumstances, apply to a worthless business, as we have concluded that ordinarily it does not apply to demises of real estate, and if at all, then only as limited hereinafter.

The courts of this country, Federal and State, have cited with approval, and generally followed, the decisions of the English courts on the doctrine of "commercial frustration," involving commercial transactions. It is held by the English courts that the doctrine has no application to an ordinary lease of real property. The question was decided in Leightons Investment Trust, Lt., v. Cricklewood Property & Investment Trust, Lt., K.B.Oct. 1942, 167 L. T.Rep. 348, affirmed by the Court of Appeal (1943, not yet published).

The action, as here, was to recover rent for demised real property. Justice Asquith of the Court of Kings Bench, stated:

"The defence is that the obligation to pay rent under the lease and indeed all outstanding obligations thereunder, have been excused or discharged by frustration owing to the supervention of the war, which has practically put an end to private building; and the sole issue in this case is whether the doctrine of frustration applies to a building lease such as that involved in this case. If it does so apply then upon the facts of the present case I should decide that the contract had been discharged. There is no question that, if it does not apply the sums claimed by the plaintiff company are due to it from the defendant company and the guarantors.

"It is not disputed that the doctrine of frustration has no application to an ordinary lease: Matthey v. Curling (127 L.T. Rep. 247; (1922) 2 A.C. 180); London and Northern Estates v. Schlessinger (114 L.T.Rep. 74 (1916) 1 K.B. 20) and Whitehall Court v. Ettlinger (122 L.T.Rep. 540; (1920) 1 K.B. 680): nor has it any application to a furnished lease, which was decided recently by Birkett, J., in Swift v. MacBean (166 L.T.Rep. 87; (1942) 1 K.B. 375). The ratio decidendi of these decisions is plain. A contract may be frustrated, but a demise is more than a contract; it is a conveyance of an estate in land or a chattel real. It transfers proprietary as well as personal rights. This seems to me just as true of a building lease as of any other kind of lease. I need not review the cases so fully assembled and commented on by Birkett, J., in Swift v. MacBean (sup).

"It was strenuously argued by Mr. Fortune, for the defendants, that the building scheme involved here was a broad commercial undertaking capable of frustration, and that the building lease was a mere pendant or adjunct of that larger venture. The fact remains that the instrument which I have to deal with is a lease, whatever its ulterior or broader objects; that, as such, the vested rights of property did not merely create a contractual right, and that on the reasoning applied by the court of first in-

stance and by the majority of the Court of Appeal in Matthey v. Curling, a decision upheld by the House of Lords, such an instrument is not affected by the doctrine of frustration.

"There must, accordingly, be judgment for the plaintiffs for the sum claimed, with costs."

The opinion of the Court of Appeal is as follows:

"Action by landlords against their tenants claiming 4171.11s. 3d. arrears of rent. The lease dated 12th May, 1936, was a building lease for 99 years. The demised property consisted of a number of sites for shops. The tenants covenanted to erect shops on the sites. Some shops were duly erected, but 14 had not been erected as, by reason of the outbreak of war, it became impossible to erect them. The defendants contended that the adventure contemplated by the lease had been frustrated and their obligation to pay rent for this portion of the demised premises was at an end. Asquity, Jr. held that the lease was an ordinary building lease, although its ulterior motive might be the carrying out of a commercial adventure. The doctrine of frustration did not apply to an agreement creating an estate by demise. He gave judgment for the plaintiffs. The defendants appealed.

"Held that the doctrine of frustration had been applied to a variety of contracts but it had never been applied to a demise of real property. There was clear authority that it could not be so applied. It was impossible for the defendants to rely on this doctrine to relieve them of their obligations as tenants under a demise of land for 99 years. Appeal dismissed. Swift v. MacBean (166 L.T.Rep. 87; (1942) 1 K.B. 375) approved."

Similar suits have been decided by the Supreme Court (App.Div.) and trial courts of New York, but so far as we are advised the Court of Appeals has not considered the questions here involved. A similar case is Colonial Operating Corp. v. Hannan Sales & Service, Inc., 265 App.Div. 411, 39 N.Y. S.2d 217, 220. A lease limited the use of a building to a show room for the sale of automobiles. Thereafter new automobiles and those driven less than 1000 miles were "frozen" by Federal regulations. The defense was that of frustration of the purpose of the lease. The court stated:

"If our construction of the unambiguous use clause, as above, is correct and if the same may not be altered by insertion therein of the word 'new,' then, as far as second-hand automobiles were concerned, the defendant could have sold the same in the demised premises without let or hindrance from the government; and the use clause was so broad in its terms that there could be no objection on the part of the landlord to the tenant's selling them.

"Therefore the Federal orders in question did not make illegal or prohibit absolutely the showing and selling of both new and second-hand automobiles and accessories.

It is clear, also, that nothing in the lease prevented the tenant from selling new automobiles to those within the exceptions above enumerated. Therefore it must be said as a matter of law that the primary purpose of the lease as to use was not frustrated, and likewise that the tenant was not relieved from continuing the use and occupation of the premises and from paying rent reserved in the lease.

"A like conclusion is, in effect, intimated in dictum in Canrock Realty Corp. v. Vim Electric Co., Inc., 179 Misc. 391, 37 N.Y.S. 2d 139 * * *; and a direct ruling, which we approve, was recently made in the Appellate Division, Third Department. Byrnes v. Balcom, 265 App.Div. 268, 38 N.Y.S.2d 801, decided December 29, 1942."

See also the following New York cases: Robitzek Inv. Co., Inc., v. Colonial Beacon Oil Co., 265 App.Div. 749, 40 N.Y.S.2d 819; Port Chester Central Corp. v. Liebert, Co.Ct. 179 Misc. 839, 39 N.Y.S.2d 41; Knorr v. Jack & Al, 179 Misc. 603, 38 N. Y.S.2d 406; Fisher v. Lohse, Sup., 42 N.Y. S.2d 121; Mutual Life Ins. Co. v. Lester Pianos, 180 Misc. 669, 42 N.Y.S.2d 350.

The New York decisions seem to hold (at least inferentially) that the doctrine of "commercial frustration" applies to leases of real estate (see above cited cases and Schantz v. American Auto Supply Co., 178 Misc. 909, 36 N.Y.S.2d 747; Signal Land Corp. v. Loecher, City Ct., 35 N.Y.S. 2d 25); but the decisions of the appellate division hold as we understand them, that

unless the Federal rules and regulations entirely prohibit or prevent the use of the leased premises for the business authorized by the terms of the lease, the lessee is liable to the payment of rent; and this was the holding of the Appellate Court of Illinois in Deibler v. Bernard Bros., 319 Ill.App. 504, 48 N.E.2d 422.

The California District Court of Appeals held in the recent case of Lloyd v. Murphy, 61 Cal.App.2d 415, 142 P.2d 939, that the lessee of a building to be used solely for the sale of new automobiles, was relieved from his obligation to pay rent by the enforcement of government regulations prohibiting the sale of new automobiles except to certain groups having preference ratings.

This is the only case decided by an appellate court cited by appellees, or that we have found after a diligent search, that lends any substantial support to appellees' contentions; and we are of the opinion that its holding is opposed to the great weight of authority.

Both parties cite the so-called prohibition cases as supporting their respective contentions that in case the lease of a building is limited by its terms to be used only for the conducting of a liquor business therein, whether the subsequent adoption of prohibition terminates the lease; a question upon which the courts are divided, depending upon the fundamental principle of law followed.

■ First, it is the rule that in the absence of an eviction, actual or constructive, or a complete destruction of the leasehold, a tenant is bound to discharge his covenant to pay rent, unless he is relieved therefrom by the happening of some event which by the covenants of the lease terminates it. Warm Springs Co. v. Salt Lake City, 50 Utah 58, 165 P. 788, L.R.A.,N.S., 1917F, 713.

This rule is based upon the common-law principle that a leasehold is an interest in real property (State ex rel. Truitt v. District Court, 44 N.M. 16, 96 P.2d 710, 126 A.L.R. 651), and that the lessee is obligated to pay the purchase price (rent) unless relieved by its terms or by eviction, actual or constructive, or by a complete destruction of the leasehold.

■ It was the rule at common law and is now the rule generally in this country, that a lessee of premises destroyed during the term of the lease by unavoidable accident, is not relieved from an express and unconditional promise to pay rent, unless the destruction of the premises is of the entire subject matter of the lease so that nothing remains capable of being held or enjoyed. Cook v. Anderson, 85 Ala. 99, 4 So. 713; Sheets v. Selden, 74 U.S. 416, 7 Wall. 416, 19 L.Ed. 166; Mayer v. Morehead, 106 Ga. 434, 32 S.E. 349; Bowen v. Clemens, 161 Mich. 493, 126 N.W. 639, 137 Am.St.Rep. 521; Cowell v. Lumley, 39 Cal. 151, 2 Am.Rep. 430; Ware v. Hobbs, 222 Mass. 327, 110 N.E. 963, L.R.A.1916F, 276; Lanpher v. Glenn, 37 Minn. 4, 33 N. W. 10.

Under this rule the mere frustration of the business permitted to be conducted upon the premises did not relieve the tenant from his obligation to pay rent. It is the basis of the decisions of a number of courts holding that the adoption of the 18th amendment to the Federal Constitution, prohibiting the sale of intoxicating liquors, did not absolve the tenant from paying the agreed rental upon premises leased to be used exclusively for the conduct of the liquor business, in the absence of a covenant in the lease relieving the tenant from the payment of rent upon the happening of such contingency. Boyle v. Teller, 132 Pa. 56, 18 A. 1069; Imbeschied v. Lerner, 241 Mass. 199, 135 N.E. 219, 22 A.L.R. 819; Goodrum Tobacco Co. v. Potts-Thompson Liquor Co., 133 Ga. 776, 66 S.E. 1081, 26 L.R.A.,N.S., 498; Gaston v. Gordon, 208 Mass. 265, 94 N.E. 307; Koen v. Fairmount Brewing Co., 69 W.Va. 94, 70 S.E. 1098; Standard Brewing Co. v. Weil, 129 Md. 487, 99 A. 661, L.R.A.1917C, 929, Ann.Cas. 1918D, 1143; Kerley v. Mayer, 10 Misc. 718, 31 N.Y.S. 818, affirmed 155 N.Y. 636, 49 N.E. 1099; Miller v. Maguire, 18 R.I. 770, 30 A. 966; Warm Springs Co. v. Salt Lake City, supra.

But other courts have excused the lessee from the payment of rent in prohibition cases upon the theory that performance of the contract having been made unlawful by a subsequent legislative act, the lease is terminated, and the lessee is absolved from

paying subsequently accruing rent. ' It is an application of the rule that if a party charge himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, *the law*, or the other party. Columbus Ry., Power & Light Co. v. City of Columbus, 249 U.S. 399, 39 S.Ct. 349, 63 L.Ed. 669, 6 A.L.R. 1618. Such is the basis for the decisions in Stratford, Inc., v. Seattle Brewing & M. Co., 94 Wash. 125, 162 P. 31, L.R.A.1917C, 931; Heart v. East Tennessee Brewing Co., 121 Tenn. 69, 113 S.W. 364, 19 L.R.A.,N.S., 964, 130 Am.St. Rep. 753; Kahn v. Wilhelm, 118 Ark. 239, 177 S.W. 403; Greil Bros. v. Mabson, 179 Ala. 444, 60 So. 876, 43 L.R.A.,N.S., 664; Schaub v. Wright, 79 Ind.App. 56, 130 N.E. 143.

It seems to have been assumed in Thomas v. Pavletich, 31 N.M. 76, 239 P. 862, that this doctrine is correct, though the question was not decided.

Professor Williston was of the opinion that it is difficult to apply the doctrine of commercial frustration to leases of real property. He states:

"There is obviously no impossibility or illegality in paying the rent, and the landlord, by making and delivering the lease, has conveyed to the tenant the estate for which rent was promised. * * * The fact that a lease is a conveyance and not simply a continuing contract and the numerous authorities enforcing liability to pay rent in spite of destruction of the leased premises, however, have made it difficult to give relief * * *. Even more clearly with respect to leases than in regard to the ordinary contracts the applicability of the doctrine of frustration depends on the *total or nearly total destruction* of the purpose for which, in the contemplation of both parties, the transaction was entered into." (Our emphasis.) 6 Williston on Contracts, Rev.Ed., Sec. 1955.

This rule was followed by the Supreme Court of the United States in Gates v. Goodloe, 101 U.S. 612, 619, 25 L.Ed. 895. The lessee of property in Memphis, Tennessee, was ejected therefrom by the military authorities of the United States, to whom he was required to pay rent before possession would be restored. The Supreme Court stated:

"They were not discharged from liability for rent which previously accrued. But since the consideration for their promise to pay rent, from time to time, was the possession and use of the leased property during the term and upon the conditions specified in the lease, and since such enjoyment and use were materially interrupted and prevented by the interference of the law, or of lawful public authority, to which both parties were amenable, the lessees, it seems to the court, ought to be protected against liability for the rent stipulated in the contract of 1859 for the period they were thus kept out of possession and enjoyment of the property. The events and contingencies causing that result were not such as the parties antici-

pated, nor such as we can suppose were in contemplation when the contract was made. Otherwise they would, it must be assumed, have been provided for in the contract."

To the same effect is Harrison v. Myer, 92 U.S. 111, 23 L.Ed. 606. We do not find that these Civil War cases have since been followed or overruled by the Supreme Court.

Attention has been called to the so-called Coronation Cases. Owners of property along the route which the coronation procession of Edward VII was scheduled to pass had rented the rooms for observing the parade, but the illness of the King resulted in the cancellation of the parade and the licensees refused to pay the rentals. It was held in a number of cases that the cancellation of the parade also cancelled the contract, upon the theory that the foundation of the contract had been destroyed. However, it was held that the contracts in question were licenses only and not demises. Kreel v. Henry, [1903] 2 K.B. 740, and see Herne Bay Steamboat v. Hutton, [1903] 2 K.B. 683.

An interesting article on this subject, in the Texas Law Review of June, 1942, entitled "War Measures and Contract Liability," authored by Professor Willard H. Pedrick of the Department of Law of the University of Texas, has considerable to say regarding the plight of lessees of garages, because of the present war conditions. We quote the following from that article:

"As a particularized example of the problem presented consideration may be given the plight of the garageman with a long-term lease now faced with drastic income reduction because of stoppage of new car manufacture, the rationed sale of existing stocks and the prospect of other measures well calculated to drive him to the wall. Under the English common law his prospects for relief are bleak indeed for the doctrine of the Coronation Cases is not accepted with respect to real property lease agreements. It has long been established, for example, that at common law complete destruction of the premises does not excuse the tenant in absence of a provision to that effect. Although this rule has been largely accepted in this country, except as changed by statute, it has been qualified in such fashion as to indicate an American willingness to apply to some extent the frustration doctrine to lease agreements. Thus many cases hold that, when the leased premises consist of space in a building subsequently destroyed, the tenant in such case is released. The distinction taken between such a case and one where the lease covers both land and buildings is consistent with the generally held conviction, previously referred to in connection with the contract cases, that the frustration doctrine should operate only in extreme cases—where the entire value of the project has been destroyed.

\*　　\*　　\*　　\*　　.　\*

"Perhaps the best solution in these depreciation cases lies in spreading the loss over

society in the hardest types of cases, via governmental relief, and some moves have been made in that direction."

■ ' If this rule should be applied to leases, then it should be limited to those cases where the law or rules, regulations and orders have made illegal or prohibited absolutely the conducting of the business contemplated by the parties. This was the basis of the decision in Colonial Operating Corp. v. Hannan Sales & Service, Inc., ~~supra.~~ 265 App. Div. 411, 39 N.Y.S.(2d) 267

■ There are no Federal regulations prohibiting the sale of gasoline, oil, tires, tubes and other merchandise ordinarily sold at filling stations, though the enforcement of such regulations has drastically reduced appellees' income, which before was less than operating expenses; nor has any Federal law, rule or regulation deprived appellees of the use of the premises as a filling station. It follows that the trial court erred in denying recovery of rent by appellant.

It is just, and no doubt to the best interest of landlords, for them to voluntarily shoulder a portion of the burden, and that it is being done generally, we are advised. But the appellant may enforce the covenant to pay her rent. In such cases relief lies only in the conscience of the landlord, to which in this case, it appears, fruitless appeals for relief have been made.

The judgment of the district court is reversed and cause remanded with instructions to the district court to set aside its judgment and enter judgment for the appellant.

It is so ordered.

SADLER, C. J., and MABRY, BICKLEY and THREET, JJ., concur.