## OTTO v. ORANGE SCREEN CO.
### No. 2815.

District Court, D. New Jersey.

Aug. 5, 1944.

Arthur N. Klein, of Bayonne, N. J., and Leonard L. Kalish, of Philadelphia, Pa., for plaintiff.

Smith & Slingerland, of Newark, N. J., for defendant.

FORMAN, District Judge.

Arthur L. Otto, plaintiff, and his assignor, A. L. Otto Company, entered into an agreement with Orange Screen Company, the defendant, on April 29, 1926, whereby the latter agreed to pay royalties on metallic screens which it manufactured and sold under a patent and certain inventions owned by plaintiff and his assignor for the life of the patent which expired in August of 1943. Royalty payments under this agreement were twenty cents per screen for the first ten thousand screens made and sold in any one calendar year, twenty-five cents per screen on all screens in excess of ten thousand and less than twenty thousand screens and fifteen cents per screen for all screens in excess of twenty thousand screens. It was also provided that a minimum of $2,000 per year, payable quarterly, should be set upon the amount of annual royalty to be paid.

Among other provisions in the contract there appeared the following: "Thirteenth: If at any time during the continuance of this agreement said company shall desire to terminate the same, it may do so upon written notice to said licensors, whereupon all payments hereunder shall cease, but the company shall be entitled to no refund of monies accrued or paid to said licensors prior to said termination. If such termination occurs by the act of the Company under this paragraph all right and title to any Letters Patent and inventions which said Company may have acquired shall automatically revert to said licensors without further act by either of the parties."

For a number of years after the execution of the contract the relationship of the parties was characterized by frequent requests of the Otto Company or its president addressed to the Orange Screen Company, to bring to a current basis the payment of the royalties due, or reports of manufacturer contemplated under the contract, and by almost as frequent requests by the

Orange Screen Company to the licensors to alter the method of payment of royalties to be made by it.

Eventually, in 1936, a further agreement was entered into between the parties as set forth in the following letter:

"A. L. Otto Co.
"Philadelphia, Penna.
"January 25, 1936.
"Orange Screen Co.,
"Maplewood, N. J.
"Dear Mr. Balch:

"This letter is to be read in connection with my letters of November 27th, 1935 and January 13th, 1936.

"The thoughts expressed in those letters are important and it is essential that you comply with the various requirements.

"First: The balance due to Mr. Kalish by you is to be paid.

"Second: All unpaid royalties for the year 1935 are to be paid at this time.

"Third: No further bills are to be created by or through Mr. Myers (your attorney, or other attorneys, which will in any way obligate the A. L. Otto Co. or myself, without my approval and consent.)

"Fourth: You are to pay to the A. L. Otto Co. on the first day of each calendar month for the period of twelve months beginning February 1st, 1936, the sum of Two Hundred Dollars ($200.00) or a total sum of Twenty-Four Hundred Dollars ($2,400.00) for the year.

"Fifth: Upon your failure to meet punctually the terms and conditions of this agreement in respect to payments, the entire amount remaining unpaid under this agreement shall become due and payable. The specific purpose of this paragraph is to insure exact compliance with the terms in reference to payments.

"Sixth: It is understood and agreed that in making this proposal, none of the terms and conditions laid down in our existing contracts relating to your manufacture and sale of Aluminum Screens under A. L. Otto patents are waived but they are to remain in full force, excepting that neither A. L. Otto Co. nor myself are to be further obligated for any legal services during the year 1936, excepting by written consent on our part.

"Seven: You are to make monthly reports showing the number of screens manufactured by you (Aluminum Screens) for each calendar month during 1936.

"Eight: If you comply with the terms of this agreement we will send you a receipt in full for all royalties which may become due to us for the year beginning January 1, 1936 and ending December 30, 1936, said receipt to be given after you have made payment in full as required by this agreement.

"The foregoing agreement is submitted in response to repeated requests from you for some form of temporary financial relief under the contracts herein referred to and and is submitted without prejudice and is specifically limited to the calendar year 1936.

"Very truly,
"A. L. Otto Co.
"A. L. Otto, Pres."

The parties agreed to an arrangement for the year 1937 in substantially the same terms set forth in the 1936 agreement except that the payments were for the sum of $220 per month or $2,640 for the year. The following letter evidences the agreement:

"A. L. Otto Co.
"Philadelphia, Pa.
"February 9, 1937.
"Orange Screen Company,
"Maplewood, N. J.
"My dear Mr. Balch:

"In reference to your letter of January 13, 1937, our reply thereto under date of January 25, 1937, your further letter of January 29, 1937 and our reply thereto under date of January 30, 1937, followed by your letter of February 1, 1937, we acknowledge receipt of your check in the amount of $220.00 which we have not yet deposited, preferring to await your formal reply to this letter.

"Tying all these letters into this correspondence as a matter of record, we submit the following in response to the request contained in your letter of January 13, 1936 for a different method of paying royalties than that stipulated in our existing contracts relating to your manufacture and sale of aluminum screens under A. L. Otto patents and for the year 1937 only.

"Our proposal is as follows:

"1: No further bills are to be created by or through your attorney, Mr. Myers or any other attorneys or individuals or corporations which will in any way obligate the A. L. Otto Company or A. L. Otto without our joint approval and consent.

"2: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1937, the

sum of $220.00 or a total sum of $2640.00.

"3: Upon your failure to meet punctually the terms and conditions of this agreement in respect to payments, the entire amounts remaining unpaid under this agreement shall become due and payable. The specific purpose of this paragraph is to insure exact compliance with the terms in reference to payments.

"4: It is understood and agreed that in making this proposal, none of the terms and conditions laid down in our existing contracts relating to your manufacture and sale of Aluminum Screens under A. L. Otto Patents are waived but they are to remain in full force, excepting that neither A. L. Otto Co. nor A. L. Otto are to be further obligated for any legal services during the year 1937, excepting by written consent on our part.

"5: You are to make monthly reports showing the number of screens manufactured by you (Aluminum Screens) for each calendar month during 1937.

"6: If you comply with the terms of this agreement we will send you a receipt in full for all royalties which may become due to us for the year beginning January 1, 1937 and ending December 30, 1937, said receipt to be given after you have made payment in full as required by this agreement.

"The foregoing agreement is submitted in response to your request for relief under the contracts herein referred to and is submitted without prejudice and is specifically limited to the calendar year 1937.

"Very truly,
"A. L. Otto Co.
"[Signed]   A. L. Otto, President
"A. L. Otto"

On March 12, 1938, plaintiff wrote defendant as follows:

"A. L. Otto Co.
"Custom Made Screens
"Offices and Mill
"1513–1515 Parrish Street
"Philadelphia
"March 12, 1938
"Attention Mr. Balch
"Orange Screen Company
"Maplewood, N. J.
"My dear Mr. Balch:

"I am enclosing an outline of proposed agreement which seems to cover our understanding from a practical stand point but as this is a long term agreement for the protection of both of us it seems to me that it would be better to have it written in legal terminology and giving the dates of our existing agreements, but before I go to this expense I want to be satisfied that it is in accordance with your understanding.

"We have previously advised you that all right, title and interest in these patents has passed to Arthur L. Otto. The A. L. Otto Company has no interest in these patents and some time ago you were sent a copy of the action to the Board of Directors of the A. L. Otto Company in making this transfer but for some reason you have never been willing to accept this transfer but have insisted in making your checks payable to A. L. Otto Company. This is not important excepting that it causes some complications in writing this agreement and in the event of the death of Arthur L. Otto might cause some annoyance to the executor of his estate.

"In view of this statement it will be necessary for us to know whether you still insist upon identifying the A. L. Otto Company with this agreement.

"Very truly,
"A. L. Otto Co."

The outline referred to in the foregoing letter is represented by the following corrected letter.[1]

"A. L. Otto Co.
"Custom Made Screens
"Offices and Mill
"1513–1515 Parrish Street
"Philadelphia
"March 12, 1938
"Attention: Mr. Balch
"Orange Screen Company
"Maplewood, N. J.
"Gentlemen:

"Referring to your letter of January 7, 1937 (answered by us January 10, 1938— your '1937' apparently a typographical error) and under the terms of certain agreements made under several dates. From time to time you have sought modification of certain terms laid down in said agreements and during the calendar years 1936 and 1937 these agreements were modified much to your financial benefit.

"You have asked that the arrangement for the calendar year 1937 be extended through the year 1938 but in order to avoid

---

[1] The italicized portions indicate corrections of obvious errors. The defendant does not dispute the corrected form of this letter.

the necessity for re-opening this matter each year we have in turn suggested that we might come to some understanding covering payments until our patents expire in August, 1943.

"Through an exchange of correspondence our minds have met and we have come to the following understanding.

"1: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1938 the sum of $210.00 or a total sum of $2,520.00 for the year.

"2: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1939 the sum of $210.00 or a total sum of $2,520.00 for the year.

"3: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1940 the sum of $210.00 or a total sum of $2,520.00 for the year.

"4: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1941 the sum of $210.00 or a total sum of $2,520.00 for the year.

"5: *You will pay to the A. L. Otto Company on the first day of each calendar month for a period of twelve consecutive months beginning February 1, 1942, the sum of $210.00 or a total sum of $2,520.00 for the year.*

"6: You will pay to the A. L. Otto Company on the first day of each calendar month for a period of eight months beginning February 1, 1943 the sum of $210.00 or the total sum of $1,680.00 for the year.

"7: Upon your failure to meet punctually the terms and conditions of this agreement in respect to payments, the entire amount remaining unpaid under this agreement shall become due and payable. The specific purpose of this paragraph is to insure exact compliance wth the terms in reference to payments.

"8: You are to make monthly reports showing the number of screens manufactured by you (Aluminum Screens) for each calendar month.

"9: It is understood that this agreement merely provides a different method for paying royalties on the basis of a fixed sum per month in lieu of the basis of the number of screens sold annually as stipulated in our existing contracts relating to your manufacture and sale of aluminum screens under A. L. Otto patents; otherwise all terms and conditions of said contracts remain in full force and effect with the single exception that no further bills are to be created by or through your attorney, Mr. Myers, or any other attorneys or individuals or corporations which will in any way obligate the A. L. Otto Company, or A. L. Otto without our joint approval and consent.

"Very truly,
"A. L. Otto Co."

Defendant signified its acceptance in its letter of March 17, 1938, in the following language:

"Orange Screen Company
"Exclusive Manufacturers of
"Extruded Aluminum Frame Screens
"Also Wood, Steel, Bronze and Roll Screens
"Maplewood, New Jersey
"March 17, 1938.
"A. L. Otto Company,
"1513 Parrish Street,
"Philadelphia, Pa.
"Dear Mr. Otto:

"We have your letter of March 12th attaching a suggested agreement form for payment of royalties over the ensuing years.

"The points as you have outlined them coincide with my understanding and if you feel it necessary to consummate the agreement in a more legal form, you are of course at liberty to do so, without expense to us.

"It will be agreeable to us to have this matter transferred to Arthur L. Otto instead of the A. L. Otto Company.

"Very truly yours,
"Orange Screen Company
"[Signed] E. P. Balch
"EPB/RF            President
"P.S. We are attaching herewith our check for $420.00 for the months of January and February 1938 as per agreement."

Attempts to formalize this agreement were rejected and the above writing constitutes the evidence of the agreement between the parties.

Payments were made under the 1938 agreement up to and including the January 1, 1942, installment. Plaintiff wrote to defendant on February 6, 1942, as follows:

"May I remind you that check for royalties due February 1st has not yet come to hand."

On February 10, 1942, defendant wrote to the A. L. Otto Company that it was terminating the agreement under paragraph XIII of the 1926 agreement, in the following language:

"February 10, 1942

"A. L. Otto Company,
"1513–1515 Parrish Street
"Philadelphia, Pa.

"Dear Mr. Otto:

"We have been operating under an agreement with you concerning your patents No. 16,148 re-issued August 25, 1925, and your patent No. 1,596,507, dated August 17, 1926.

"The former expired June 3 of last year and the latter will expire August 17, 1943.

"Our agreement with you permits a method of termination and paragraph 13 of that agreement reads as follows:

" 'If at any time during the continuance of this agreement said Company shall desire to terminate the same, it may do so upon written notice to said licensors, whereupon all payments hereunder shall cease, but the Company shall be entitled to no refund of monies accrued or paid to said licensors prior to said termination. If such termination occurs by the act of the Company under this paragraph all right and title to any letters patent and inventions which said Company may have acquired shall automatically revert to said licensors without further act by either of the parties.'

"Inasmuch as aluminum for screen manufacturing is no longer available because of restricted measures caused by the war we desire to terminate this agreement with you as of this date.

"If you will send me a statement of any monies due you for February 1 to date together with your letter accepting termination of this agreement, I would like to clear the matter up as promptly as possible.

"Very truly yours,
"Orange Screen Company,
"[Signed]  E. P. Balch
"EPB/RF                    President."

Upon the receipt of this letter, plaintiff invoked the acceleration clause and demanded full payment under the contract and refused to accept defendant's check covering royalties due up to February 10, 1942, the date defendant notified plaintiff that it was terminating the agreement.

Plaintiff brings this action to recover $4,-200, the total of the balance of the payments unpaid under the 1938 agreement, together with interest from February 1, 1942.

Both parties have moved for summary judgment under the Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c.

Defendant regards the 1938 agreement as a modification of the original agreement entered into in 1926, having as its sole purpose the substitution of fixed royalty payments in place of the fluctuating payments set forth in the 1926 agreement. It points to the paragraph in the 1938 agreement, quoted above, to the effect that the terms and conditions of the former contracts were to remain in full force and effect, to substantiate its position that it might exercise its right of termination upon written notice at any time it desired under the provisions of paragraph XIII of the 1926 agreement. It contends that the acceleration clause contained in the 1938 agreement was waived by plaintiff's continued acceptance of monthly installments later than the first day of each calendar month; that because of plaintiff's actions and his letters in this regard the acceleration clause was regarded by both parties to mean that payment must be made within a reasonable time. Defendant particularly points to plaintiff's letter of February 6, 1942, as a distinct waiver of the acceleration clause with respect to the February 1 payment in 1942 even if it be assumed that plaintiff could strictly enforce it as of that date. Defendant therefore considers itself liable for royalty payments up to February 10, 1942, at which time it notified plaintiff in writing that it was terminating the contract.

A review of the exhibits produced by both parties in support of their respective motions leads to the conclusion that the parties intended in 1938 to revise the original contract of 1926 so as to provide for a fixed sum to be paid in royalties for the entire length of the unexpired term of the original contract rather than agree upon the terms of payment each year. The fluctuating method of paying royalties under the 1926 agreement was unsatisfactory to defendant and in 1938 plaintiff agreed to substitute fixed monthly payments. Continued requests for reductions each year finally led to the plaintiff's agreement to accept a fixed sum for the unexpired term

of the contract and to forego its right to revert to fluctuating payments, after the expiration of the terms of the fixed royalty method of payment, i. e., at the end of the years 1936 and 1937. Plaintiff therefore contemplated in 1938 receiving a fixed sum for the balance of the term its patent had to run—approximately five and one-half years.

Attention is directed to the specific character of the language used in the letter of A. L. Otto Company of March 12, 1938, wherein in part it wrote: "You have asked that the arrangement for the calendar year 1937 be extended through the year 1938 *but in order to avoid the necessity for reopening this matter each year we have in turn suggested that we might come to some understanding covering payments until our patents expire in August 1943."* [Emphasis supplied.]

It is to be observed that here was the heart of a new agreement in which a certain definite obligation for payment of a new sum of money was to be undertaken over a period until "our patents expire in August of 1943."

This proposal found unqualified acceptance on the part of Orange Screen Company as is evidenced in several writings, as for instance, when it wrote on March 17, 1938: "The points as you have outlined them coincide with my understanding and if you feel it necessary to consummate the agreement in a more legal form, you are of course at liberty to do so, without expense to us." And on April 8, 1938:

"I think it would be best for us to continue on the basis of the agreements reached in our recent correspondence and we are willing to settle the matter on the basis of the understanding as outlined and without the use of a more formal agreement.

"We will adhere to the spirit of the agreement and will make payments promptly on the 10th of each month and our understanding is that the present payments will continue *until the last expiring Otto patents under the agreement namely, August 1943."* [Emphasis supplied]

It is plain that neither party to the contract contemplated its termination prior to its expiration in August of 1943. It is true that both parties intended to be bound by their original agreement except for the different method of paying royalties and an incidental change concerning bills to be created by or through defendant's attorney and they so specifically state in their agreement of 1938, but they did not intend that the right of the defendant to terminate the contract at its will should continue to exist. Such a right would be inconsistent with and repugnant to the terms of the new agreement and must be disregarded as such. The intention of the parties at the time of entering the 1938 agreement must prevail. Plaintiff consented to receive less than he might anticipate under the existing contract under ordinary circumstances in return for a fixed sum to be paid promptly in installments until August of 1943. This is distinctly shown by the agreement itself which unqualifiedly obligates defendant to pay a fixed sum of money each year in monthly payments as an annual installment. Defendant agreed to pay this fixed sum for the continued use of the rights it obtained to use plaintiff's patent and inventions in its manufacture and sale of metallic screens. Both parties intended to be bound by whatever provisions of the 1926 agreement were consistent with their new agreement of 1938. The record leaves no doubt that a new agreement was effected whereby *a fixed sum* was agreed upon *for the balance of the contract.* A right to terminate at will without more could not possibly be consistent with such an arrangement, for it would defeat the intent and purpose of plaintiff seeking to obtain a fixed sum for the remainder of the period left to run while he still was possessed of the right to insist on a compliance with the terms of the original agreement.

The use of an acceleration clause in the 1938 agreement, (absent in the 1926 agreement), although it does not add to the determination of the intent expressed by the parties, is entirely consistent with the intent plaintiff expressed to get a fixed sum of money, and no less, within the time specified.

■ Acquiescence on the part of the plaintiff in defendant's belated payments, and acceptance thereof, may be evidence of waiver of a breach of the contract, but can only relate to breaches that have already occurred. Failure to pay on time under an acceleration clause gives rise to a new breach for each installment. Plaintiff rightfully contends that such failures are separate and distinct although recurring breaches. It is necessary for defendant to show that the breach occurring on Feb-

ruary 1, 1942, was waived by plaintiff. The evidence is to the contrary as to plaintiff's actions subsequent to that date.

Plaintiff's letters to defendant concerning breaches prior to February 1, 1942, were careful to attempt to indicate that at no time did plaintiff intend to waive the operation of the acceleration clause as to any breach that occurred in the past or as to any breach that may occur in the future. The letter of February 6, 1942, informing defendant that the *check* for the February 1, 1942, payment *"has not yet come to hand"* certainly cannot be construed to be a waiver of any of plaintiff's rights. At most defendant is being warned that plaintiff has not received the check, whatever the reason, and that he is in danger of having the acceleration clause invoked.

A further contention of defendant is that it was excused from performance of the contract because it became impossible to perform the contract on January 27, 1942, when the government made it unlawful to use aluminum for the uses to which defendant intended to apply it. Defendant claims its stock was frozen and that it had to sell goods on hand at a loss. Ordinarily conditions arising from a state of war and acts of the legislature and the executive branches of the government do not constitute excuses for nonperformance of contracts. 17 C.J.S., Contracts, § 463. There may be cases where such performance may be excused where direct intervention such as actual seizure of goods by the government prevents performance, but such· is not shown to be the situation here. The financial difficulties complained of by defendant are of a temporary nature for the state of war might cease to exist at any time. In the case of Lloyd v. Murphy, 142 P.2d 939, brought to our attention by the defendant, decided by Judge White of the District Court of Appeal of California for the Second District, Division One, a lessee was excused from performance of a lease under which the use of the premises was restricted to the sale of new automobiles· when the federal regulation prohibited the sale of new automobiles, except under greatly restricted and limited conditions. This case was cited by the Supreme Court of New Mexico in Wood v. Bartolino, 48 N.M. 175, 146 P.2d 883, 888, by Judge Brice as being "opposed to the great weight of authority." In the Wood case the lessee of a filling station was not excused from the payment of rent on the theory that gov-

ernment restrictions upon the sale of automobiles, tires, tubes and gasoline rendered the use of the leased premises impossible and impractical. War is bound to produce certain economic casualties and losses. When they occur they must be sustained by one party or the other and there is no purpose in shifting the burden.

Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.